# SUPREME JUDICIAL COURT

FOR THE

COUNTY OF WORCESTER, OCTOBER TERM 1867,
AT WORCESTER.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN, } Justices.
Hon. HORACE GRAY, Jr.,
Hon. DWIGHT FOSTER,

NATHANIEL C. DAY *vs.* SAMUEL D. BARDWELL & others.

The insolvent laws of the Commonwealth were not superseded until June 1, 1867, by the
United States bankrupt law, approved by the President, March 2, 1867, U. S. St. 1867,
c. 176.

BILL IN EQUITY to set aside proceedings instituted under the
insolvent laws of the Commonwealth March 18, 1867, by Abner
Woodward, George P. Carpenter and Walter W. Carpenter,
three of the respondents, upon which the judge of insolvency
immediately afterwards issued a warrant, and caused notice to
be published, and subsequently assigned the estate of said debt-
ors to Samuel D. Bardwell and Humphrey Stevens, who also
were made respondents to this bill. The complainant, who had
previously attached property of the debtors in an action still
pending, alleged that the proceedings in insolvency were void

because the insolvent laws of the Commonwealth and the authority of the judge of insolvency to issue warrants or make adjudications of insolvency had been wholly superseded by the bankrupt act, U. S. St. 1867, *c.* 176. The respondents filed a general demurrer, and the case was reserved by *Chapman,* J., for determination by the full court.

*G. W. Bartlett,* for the respondents.

*G. F. Hoar & F. P. Goulding,* for the complainant. When the petition of the respondents Woodward and Carpenter was filed, the United States bankrupt law was so far in operation that the Massachusetts insolvent law was superseded. The United States law, being approved March 2, 1867, took effect on that day, except so far as otherwise therein expressly provided. 1 Kent Com. (6th ed.) 454. From and after that date there was, under the supreme authority of congress, a complete bankruptcy system in force, defining the conditions of discharge, vesting rights in creditors, securing rights thereafter to be enforced by assignees, affecting and regulating the transfer of property, prescribing rules of conduct for debtors and guarding such rules by penalties which congress had no constitutional power to impose except in aid of and as part of a system of bankruptcy. For public convenience, the institution of proceedings for the relief of debtors or for securing the rights of creditors was postponed for a short time, just as congress might have provided that petitions should be presented only to the circuit courts in term time; but in every other particular the system was in full force. U. S. St. 1867, *c.* 176, §§ 29, 35, 39, 44, 50.

The concurrent operation of the Massachusetts insolvent law with such a system was impossible. The power of congress over the subject of bankruptcy, when exercised, is exclusive and supreme. The system it establishes must be uniform. U. S. Const. art. 1, § 8. Federalist, No. 32. *Sturges* v. *Crowninshield,* 4 Wheat. 122. *Ogden* v. *Saunders,* 12 Wheat. 264. Story on Const. § 1109. *Griswold* v. *Pratt,* 9 Met. 16. Therefore at the time of the adjudication by the state judge, declaring these debtors insolvent and ordering their property to be sequestered and divided on certain principles among their creditors,

preferring some to others, requiring conveyances from the debtors to carry into effect such orders and preferences, prohibiting certain other acts on the part of the debtors, dissolving certain liens on their property, and discharging on certain conditions a considerable portion of their debts, a law of the United States was in force, providing that, if any one of numerous acts specified therein should have been committed by these debtors, their property on June 1 thereafter might be sequestered by a different power, marshalled on different principles, and distributed among different persons, with different conditions affixed to the discharge. Suppose a debtor to have committed an act of bankruptcy on May 1, 1867. His Massachusetts creditors might well have contended for a right, as a result of that act, on June 1 to cause him to be adjudged a bankrupt, his property to be divided among them and certain stringent conditions to be annexed to his discharge. Could the debtor voluntarily submit himself to another tribunal and be discharged by it of his debts on different conditions? It manifestly could not be maintained that the states might pass laws after the United States law had gone into full effect, declaring acts to be acts of bankruptcy which were not such under the United States law.

The act of bankruptcy vests in the creditor the right to his subsequent remedy. *Shawhan* v. *Wherritt*, 7 How. 627. There are many acts which the Massachusetts system and the United States system in common make acts of bankruptcy. The adjudication by a court of competent jurisdiction is conclusive as to all the world. *Denny* v. *Mattoon*, 2 Allen, 361. *Merriam* v *Sewall*, 8 Gray, 316. Johnson, J., in *Ogden* v. *Saunders*, 12 Wheat. 366. What is to be the effect of an adjudication by the state court, dismissing a petition on the ground that the alleged act of bankruptcy is disproved? If it is to protect the debtor, it ousts the jurisdiction of the United States and is binding on foreign creditors. If it does not protect the debtor, that must be by force of the United States law conflicting with and overriding the state jurisdiction.

By § 1 of the United States law provision is made for the collection of all assets. By § 14 " all property conveyed by the

debtor in fraud of his creditors" vests in the assignee. By the state law the same is to pass to the state assignee. Suppose the state assignee has it; must he give it up? Suppose neither has it; which shall recover it? By § 15 of the United States law "the assignee shall demand and receive from any and all persons holding the same, all the estate assigned or intended to be assigned under the provisions of this act." By § 16 of the United States law the assignee shall be admitted to prosecute actions in his own name which were pending in the debtor's name at the time of the commencement of the proceedings in bankruptcy. The state law contains a like provision. Which shall come in? Further, does a discharge under the state law bar the right of creditors to prove in United States bankruptcy proceedings?

Our position may be summed up thus: 1. There cannot be two systems defining duties and prohibiting acts, administered by distinct tribunals, and vesting the same rights in the same property in different persons, in force at the same time and applicable to the same subject. 2. That system cannot be uniform throughout the country, which leaves in force in some states additional and supplementary provisions not existing in others.

A state insolvent law, as against the law of the United States, is of no higher authority than a voluntary conveyance. *Cornwell's appeal,* 7 W. & S. 305. The conveyance ordered in this case by the state court was in conflict with provisions of the United States law and was prohibited by it. If the United States have prohibited a debtor from disposing of and distributing his estate in a certain way, no state law can authorize him to do it, or can do it for him. The debtor must be held to intend the legal consequences of his acts. If he makes by order of the state court a conveyance of his property, knowing himself to be insolvent, and intending that his property shall be distributed thereby in a different manner from that provided by the United States bankrupt law, the conveyance is void and the assignee in bankruptcy may set it aside. If it be said that the practical inconvenience follows that a period of time was left in which a debtor had no remedy, it is a sufficient answer to say

that congress did not see fit to make a special provision for those states which had bankrupt laws already in force, and that the *other states* required no such provision.

GRAY, J. The question which lies at the foundation of this bill is, At what time did the United States bankrupt law of 1867, approved by the president on the 2d of March 1867, take effect so far as to prevent the institution of proceedings by an insolvent debtor under the insolvent laws of the Commonwealth? And, notwithstanding the ingenious arguments which have been presented in support of a different construction, we are unanimously of opinion that it did not so take effect until the 1st of June 1867.

It is well settled that the power, granted to congress by the constitution, to establish uniform laws on the subject of bankruptcies throughout the United States, does not, until the power is exercised and such laws are put in operation by congress, exclude the right of the states to pass similar laws; and that the operation of state insolvent laws is therefore superseded and suspended, so far, at least, as the two are applicable to the same persons, as soon as a national bankrupt law has taken effect, and not before. *Sturges* v. *Crowninshield,* 4 Wheat. 122. *Ogden* v. *Saunders,* 12 Wheat. 213. *Ex parte Eames,* 2 Story, 322. *Judd* v. *Ives,* 4 Met. 401. *Griswold* v. *Pratt,* 9 Met. 16.

A statute doubtless takes effect from the day of its approval by the executive, unless its operation is postponed by the provisions of the same or of some other law to a future day. But the bankrupt act of 1867 contains peculiar provisions which prevent it from falling within this general rule. The great object of all bankrupt or insolvent laws is to distribute the property of a debtor who is unable to pay his debts in full, among his creditors, by judicial proceedings in which all may be heard, and to discharge his property afterwards acquired, or at least his person, from the debts owed by him at the time of the institution of such proceedings. As was said by Mr. Justice Johnson, delivering the opinion of the supreme court of the United States in *Ogden* v. *Saunders,* 12 Wheat. 366, " Every bankrupt or insolvent system in the world must partake of the character of a

judicial investigation. Parties whose rights are to be affected are entitled to a hearing. Hence every system, in common with the particular system now before us, professes to summon the creditors before some tribunal, to show cause against granting a discharge to the bankrupt." Under the existing bankrupt law of the United States, no judicial proceedings for the sequestration and distribution of the debtor's property, or for granting him a discharge, could be instituted until the 1st of June 1867; for by the express terms of the proviso at the end of the last section, which qualifies the whole statute, " no petition or other proceeding under this act shall be filed, received or commenced before " that day.

It was argued that this clause was analogous to a provision requiring petitions in bankruptcy to be presented in term time only, and that in every other particular the system was in full force immediately upon the passage of the statute. But such a construction is inconsistent with the express provisions and the manifest purpose of the law. The first and second sections provide that the district and circuit courts of the United States shall be always open for the transaction of business under this act, and that the powers and jurisdiction conferred by it may be exercised, as well in vacation as in term time, by the court, or by a judge at chambers. Like facilities for beginning proceedings are afforded by our insolvent law and by the English bankrupt act, and are essential to the efficient administration of any system of bankruptcy, for without them a fraudulent debtor might easily conceal or remove his property and depart out of the jurisdiction before a warrant could issue. It would require very explicit language to satisfy us that congress intended to abolish or supersede all local bankrupt or insolvent laws four months before it established any general system of judicial proceedings in their place.

The enactment of the last section, by which " this act shall commence and take effect as to the appointment of officers created thereby, and the promulgation of rules and general orders, from and after the date of its approval," implies that it was not to take effect at that time in other respects as to which no

special provision is made; and was evidently intended merely to allow the necessary officers to be appointed and suitable rules and orders established in advance, so that the complete system might go into effect at once when the time for instituting judicial proceedings should arrive, which without some such express authority could not have been done. *Commonwealth* v. *Fowler*. 10 Mass. 290. *Opinion of Justices*, 3 Gray, 606, 607.

That congress did not consider or intend that the law should go into general operation before proceedings could be commenced under it is made manifest by the provision of the thirty-third section that " in all proceedings in bankruptcy commenced after one year from the time this act shall go into operation " no discharge shall be granted to a debtor whose assets do not pay fifty per cent. of his debts, without the written assent of a majority of his creditors. As the act speaks from the time of its passage, the use, in this section, of words in the future tense — " shall go into operation " — is inconsistent with the hypothesis that the statute goes into operation presently upon its passage, and clearly indicates that the time intended is the day when proceedings may first be commenced.

The other provisions of the statute, to which we have been referred, (assuming them to be within the constitutional power of congress, and binding, according to their terms, from " the time of the passage of the act,") apply only to cases in which proceedings are actually instituted on or after the 1st of June, and do but define the foundation, regulate the conduct, and tend to secure or promote the efficiency of such proceedings. The twenty-ninth and thirty-ninth sections specify what acts done by a bankrupt after the passage of the statute shall, after the system shall have been put in full operation, enable his creditors to apply to the court for an adjudication of bankruptcy, and prevent his obtaining a discharge. The forty-fourth section punishes as misdemeanors certain acts of concealment or destruction of property by the bankrupt after the commencement of proceedings, or of fraudulently obtaining property on credit or disposing of property so obtained, within three months before such commencement. The thirty-fifth section, (nearly corresponding

to our own General Statutes, *c.* 118, §§ 89, 90,) provides that if the debtor shall make to any person with notice of his intent certain fraudulent preferences, within four months, or payments or transfers to defeat the operation of the statute, within six months, before the filing of the petition by or against him, the same shall be void, and the assignee may recover back the property or its value.   The only effect of this section is to enable the acts therein enumerated to be avoided by an assignee subsequently appointed under proceedings in bankruptcy.   *Gardner* v. *Lane*, 9 Allen, 497.   *Seaman* v. *Stoughton*, 3 Barb. Ch. 349.

It was argued that an assignment by the judge of insolvency under the statutes of this Commonwealth after the 2d of March and before the 1st of June would be in conflict with and prohibited by the provisions of the bankrupt law.   But we find nothing in this law to warrant such an inference.   An assignment under our insolvent laws is the act of the law, not of the party; executed by the judge, not by the debtor; to secure his property for equal distribution among his creditors, not to defraud or deprive them of any part of it; and the confirmatory instruments which the debtor may be required by the assignee and ordered by the judge to execute are equally made by legal authority and direction.   Gen. Sts. *c.* 118, §§ 42, 70, 71.   Property included in an assignment from the judge of insolvency, which has taken effect before proceedings in bankruptcy are or can be instituted, no longer belongs to the debtor.   If such proceedings are afterwards instituted, property which has already been so assigned is no part of " the assets of the bankrupt," which may be collected under authority of the United States court according to the first section of the bankrupt law ; nor of " the estate, real and personal, of the bankrupt," or " the property conveyed by the bankrupt in fraud of his creditors," which will pass by an assignment from a judge of that court under the fourteenth section; (for it has vested by egal proceedings in a trustee for creditors, who does not hold under and is not affected by the fraudulent title;) nor of " the estate assigned or intended to be assigned under the provisions of this act," which the assignee in bankruptcy is entitled by the fifteenth section to demand and

receive; nor "a debt or other thing which might or ought to pass to the assignee by the assignment" in bankruptcy, for which an action pending in the name of the debtor at the time of the commencement of proceedings in bankruptcy may be prosecuted by such assignee under the sixteenth section.

This case does not require us to consider what effect an adjudication by the court of insolvency upon the petition of a creditor alleging an act of bankruptcy, or upon the application of the debtor for his discharge, may have upon the determination of like questions arising in proceedings afterwards commenced under the bankrupt law. The effect, whatever it may be, which the judgment of a state court upon a question within its jurisdiction may have, directly or indirectly, in similar proceedings in the courts of the United States, has no tendency to take away or diminish the authority of the laws and the tribunals of the state before the courts of the United States have been vested with any jurisdiction whatever over the subject.

The laws established by congress on the subject of bankruptcies under the power conferred by the constitution must indeed be uniform throughout the United States. But the extent to which this power shall be exercised rests in the discretion of congress; uniformity is required in the national legislation only; and the laws of the several states may be left in force so long and to such extent as congress may see fit. In the bankrupt law of 1841, liens created according to the peculiar laws of the several states, by levy of execution, or by attachment on mesne process, even after the bankrupt act had taken full effect, were preserved, if existing before the actual institution of proceedings in bankruptcy in the case of the particular debtor. *Savage's assignee* v. *Best*, 3 How. 111. *Peck* v. *Jenness*, 7 How. 612. *Davenport* v. *Tilton*, 10 Met. 320.

We have discussed the question presented by this bill as if it were a new one. But it seems to us to have been settled, in substance and principle, by the adjudications upon the bankrupt act of 1841. That act, which was passed on the 19th of August 1841, and by its seventeenth section was to "take effect from and after" the 1st of February 1842, declared in the second

section that " all future payments, securities, conveyances, transfers or agreements " by any bankrupt in contemplation of bankruptcy, for the purpose of giving a preference, or without valuable consideration, should be void, the assignee in bankruptcy might recover the property, and the bankrupt should receive no discharge. The word " future " in that section was held by Mr. Justice Story and by this court to include all preferences given after the passage of the act, even before it took effect according to the seventeenth section. *Hutchins* v. *Taylor*, 5 Law Reporter, 289. *Swan* v. *Littlefield*, 4 Cush. 574. The same section contained a further provision, which was assumed to be valid by Mr. Justice Story in *Hutchins* v. *Taylor*, 5 Law Reporter, 293, that a bankrupt who had, since the 1st of January 1841, or at any other time, in contemplation of the passage of a bankrupt law, given a preference to a creditor, should not upon his own voluntary application receive a discharge without the consent of a majority of the creditors not so preferred. And the fourth section declared that no person who should apply trust funds to his own use, or, being a merchant, banker, factor, broker or underwriter, should not keep proper books of account, " after the passing of this act," should be entitled to a discharge. See *In re Tebbetts*, 5 Law Reporter, 267 ; *Chapman* v. *Forsyth*, 2 How. 207, 208. Yet this court sustained proceedings in insolvency which were commenced and notice of the issuing of the warrant in which was published in December 1841, four months after the passage of the bankrupt act, and in which the assignment was not made until the 7th of February 1842, after that act had gone into full operation. *Judd* v. *Ives*, 4 Met. 401. See also *Ex parte Eames*, 2 Story, 325 ; *In re Holmes*, 5 Law Reporter, 361 ; *In re Horton*, Ib. 462 ; *Larrabee* v. *Talbott*, 5 Gill, 426.

The cases cited for the plaintiff are quite distinguishable from this. *Cornwell's appeal*, 7 W. & S. 305, (without regarding the fact that it has been overruled by the court which made it, in *Weiner* v. *Farnum*, 2 Barr, 146, inasmuch as this was upon grounds inconsistent with the decisions in *Hutchins* v. *Taylor* and *Swan* v. *Littlefield*, above cited,) was a case of a voluntary assignment by which some creditors were preferred, and therefore

affords no guide in the case of a judicial assignment under legal proceedings. In *Shawhan* v. *Wherritt*, 7 How. 627, the proceedings in the state court were by suit in equity, commenced after the bankrupt law had taken effect, and with notice of the act of bankruptcy on which proceedings in bankruptcy were afterwards instituted.

As the assignment by the judge of insolvency, which this bill seeks to set aside, was made and took effect before the 1st of June last, when the bankrupt act went into operation, though since the 2d of March, the date of its passage, the order in this suit must be *Demurrer sustained.*