### EMORY D. LOTHROP *v.* HIGHLAND FOUNDRY COMPANY.

Worcester.   Oct. 2, 1879. — Jan. 12, 1880.   ENDICOTT & LORD, JJ., absent.

A conveyance by way of preference, made by an insolvent debtor, in contravention of the provisions of the insolvent law of the Commonwealth, while the United States bankrupt act of 1867 was in force, is a sufficient cause for instituting proceedings in insolvency against the debtor after the repeal of the bankrupt act.

A petition for a warrant to seize the estate of an insolvent debtor, under the Gen. Sts. c. 118, § 103, which alleges that he has made a mortgage of his personal property to secure the payment of a preëxisting debt to the mortgagee, with intent to secure to the latter a preference, and to defraud his creditors, the debtor being at the time insolvent and having reasonable cause to believe himself insolvent, need not allege that the mortgagee knew or had reasonable cause to believe that the debtor was insolvent.

PETITION IN EQUITY to this court, under the Gen. Sts. c. 118, § 16, to stay proceedings in which the court of insolvency had issued a warrant against an insolvent debtor upon the petition

of a creditor, which was filed September 16, 1878, under the Gen. Sts. *c.* 118, § 103, and alleged that the debtor on August 31, 1878, made two mortgages of his personal property to secure the payment of preëxisting debts to the mortgagees, with intent to secure to them a preference, and to defraud his creditors, the debtor being at the time insolvent and having reasonable cause to believe himself insolvent.

The petition to this court alleged that the court of insolvency had no jurisdiction of the case : 1st. Because, at the time of the alleged making of the mortgages, the insolvent laws of Massachusetts were not in force, and the acts complained of were not in violation of any law then of binding force in this Commonwealth.    2d. Because the original petition was defective, in not setting forth that either of the mortgagees knew or had reasonable cause to believe that the debtor was insolvent at the time of making the mortgages to them.

The petition to this court was dismissed, with costs, by *Colt*, J. ; and the petitioner appealed to the full court.

*T. G. Kent*, for the petitioner.

*H. J. Boardman & C. Blodgett*, for the respondent.

GRAY, C. J.    The principal question in this case is whether a conveyance by way of preference, made by an insolvent debtor, in contravention of the provisions of the insolvent laws of the Commonwealth, while the recent bankrupt act of the United States was in force, is a sufficient cause for instituting proceedings in insolvency against the debtor since the repeal of the bankrupt act.    This question appears to us to be substantially determined by the judgments heretofore delivered by this court as to the effect of the bankrupt act of 1841 upon the insolvent law of 1838.

The first insolvent law of Massachusetts was passed on April 23, 1838, and took effect on August 1 of the same year.    St. 1838, *c.* 163, § 26.    The United States bankrupt act of 1841 was passed on August 19, 1841, and took effect from and after February 1, 1842.    U. S. St. August 19, 1841, § 17.    By the St. of Massachusetts of 1842, *c.* 71, it was enacted that the insolvent law of 1838 (except the provision for discharging attachments by giving bond) " shall be suspended so long as the bankrupt law of the United States shall continue in force ; provided, that noth-

ing in this act contained shall affect any proceedings which may be pending under the provisions of the act hereby suspended, when this act shall take effect." This statute, though passed on March 3, yet, as it did not expressly prescribe the time when it should go into operation, did not take effect until thirty days afterwards. Rev. Sts. *c*. 2, § 5. But it was held by this court that the bankrupt act of 1841, by its own force, suspended the operation of all state insolvent laws applicable to like cases; and therefore that proceedings in insolvency instituted on March 3, 1842, (while that bankrupt act was in force, though before the St. of 1842, *c*. 71, took effect,) were unauthorized and void, if the debtor and his property were subject to the operation of the bankrupt act, although no proceedings under that act had been had against him. *Griswold* v. *Pratt*, 9 Met. 16.

The bankrupt act of 1841 was repealed by act of Congress of March 3, 1843. This court held that an attachment made while the bankrupt act of 1841 was in force, and the insolvent law of 1838 was suspended, was dissolved by an assignment of the debtor's estate under the insolvent law on proceedings instituted after the repeal of the bankrupt act; and Chief Justice Shaw said: " The insolvent law, during its suspension, existed to many purposes. It was suspended only during the existence of another system of paramount authority, designed for the accomplishment of the same purpose, namely, a general and equal distribution of the property. When, therefore, the operation of this suspending law ceased, the original act was reinstated in active operation, and took effect from its original enactment." *Ward* v. *Proctor*, 7 Met. 318.

In *Atkins* v. *Spear*, 8 Met. 490, it was contended that certain transfers, assignments and payments, made by a debtor while the bankrupt act of 1841 was in force and the insolvent law suspended, invalidated a certificate of discharge under proceedings in insolvency commenced after the repeal of the bankrupt act. Mr. Justice Dewey, in delivering the judgment of the court, said that, upon the repeal of the bankrupt act, " the insolvent law of Massachusetts was revived, and with its revival all the limitations and restrictions upon the right to a discharge revived, although the acts had occurred during its suspension; " and that therefore, if the alleged acts of the defendant were within the

cases specified in the insolvent law of 1838, or the statutes supplementary thereof, as avoiding a discharge, then they would have that effect, but not otherwise.  He then proceeded to examine the various acts relied on, and to show that none of them contravened the provisions of the insolvent laws, — which would have been wholly unnecessary if no acts whatever, done while the bankrupt act was in force and the insolvent laws suspended, could have been deemed to have been prohibited by the insolvent laws.

In *Austin* v. *Caverly*, 10 Met. 332, Chief Justice Shaw referred to *Ward* v. *Proctor* and *Atkins* v. *Spear*, above cited, as establishing that, upon the repeal of the bankrupt act of 1841, " the insolvent law of 1838 went into renewed and active operation, to be construed according to the terms of its original enactment."

It may also be observed that fraudulent conveyances made after the bankrupt act of 1841 was passed, but before it took full effect so as to suspend the operation of state insolvent laws, have been held to afford grounds for impeaching a certificate of discharge obtained, or for allowing the property conveyed to be recovered back by an assignee appointed, under proceedings in bankruptcy instituted after the bankrupt act took full effect. *Swan* v. *Littlefield*, 4 Cush. 574.  *Day* v. *Bardwell*, 97 Mass. 246, 255, and cases cited.

The recent bankrupt act of the United States was enacted on March 2, 1867, and did not take full effect, so as to suspend the operation of the insolvent laws of the Commonwealth, until June 2, 1867.  *Day* v. *Bardwell*, 97 Mass. 246.  It was repealed by the U. S. St. of June 7, 1878, which took effect on September 1, 1878.  The omission of the Legislature of the Commonwealth to make any regulation whatever as to the suspension or the revival of the operation of the insolvent laws, by reason of the contemplated or the actual enactment or repeal of the last bankrupt act, can hardly be explained on any other hypothesis than that it was considered to be settled by the judgments of this court, that no such legislation was necessary, either to suspend the operation of the insolvent laws so long as the bankrupt act continued in force, or to revive the operation of all the provisions of the insolvent laws, as if they had never been suspended, so soon as the bankrupt act was repealed; and

that the effect, and the only effect, of the bankrupt act upon the insolvent laws was to suspend, so long as it was in force, the right to institute proceedings under those laws in cases within its provisions. In view of the course of legislative action and of judicial decision on the subject, it would be most unreasonable to conclude that fraudulent preferences made since the passage of the insolvent laws and of the bankrupt act should not be reached by the provisions of either.

The objection that the petition to the court of insolvency is defective, for want of an allegation that the mortgagees knew or had reasonable cause to believe that the debtor was insolvent, cannot be sustained. The *dicta* of Chief Justice Shaw in *Ex parte Jordan*, 9 Met. 292, on which this objection is founded, were unnecessary to the decision of that case, and are controlled by the opinion subsequently delivered by him in *Thompson* v. *Stone*, 8 Cush. 103, as well as by the express provision of the St. of 1856, *c.* 284, § 29, which the Commissioners on the General Statutes indicate no purpose to abrogate. The difference in the language of the different sections of *c.* 118 of the Gen. Sts. manifests the intention of the Legislature that, in order to enable the assignee to maintain an action under § 89 to recover back the property conveyed, it should be necessary to prove knowledge or reasonable cause to believe, on the part of those receiving or benefited by the conveyance, that the debtor was insolvent or in contemplation of insolvency at the time of making it; but that the liability of the debtor to proceedings in insolvency under § 103, like his right to a certificate of discharge under § 87, should depend solely on his own intent and purpose and cause of belief, or, in other words, upon the question whether he, and not upon the question whether any other person, has done an act in fraud of the insolvent laws. And the petition to the court of insolvency in this case is in the form which has been generally used under those statutes. See Cutler's Insolvent Laws (3d ed.) 125; (4th ed.) 193.

*Decree affirmed.*