In Equity.

## WILLIAM A. MOODY

*vs.*

## PORT CLYDE DEVELOPMENT COMPANY.

Cumberland.     Opinion February 5, 1907.

*Courts. Jurisdiction. Insolvent Corporations. Receivers. United States Bankruptcy Act, 1898. Statute 1905, chapter 85, sections 1, 2, 3, 4. R. S., chapter 47, section 79.*

The very foundation of judicial proceedings is jurisdiction, and the question of jurisdiction may be raised at any stage of the proceedings by any suggestion that will apprise the court of the want of jurisdiction.

In the case at bar, a bill in equity was filed against the defendant corporation by one of its stockholders as provided by chapter 85 of the Public Laws of 1905, and after hearing thereon a receiver was appointed for the defendant corporation under the provisions of the aforesaid chapter. At the time the aforesaid chapter was enacted, the present United States Bankruptcy Act of 1898 was in operation and also was in operation at the time the aforesaid bill in equity was filed and also when the aforesaid receiver was appointed. Previous to the filing of the aforesaid bill in equity and the appointment of a receiver as aforesaid, a creditor had brought suit against the defendant corporation and made a general attachment of all the defendant corporation's real estate. After the appointment of a receiver as aforesaid, the attaching creditor filed a petition praying that the proceedings appointing the receiver and the receiver-ship be dismissed and that the petitioner be allowed to prosecute its suit without any interference or objection on the part of the alleged receiver. The petitioner contended that the state court had no jurisdiction in the matter of appointing the receiver, for the following reasons: First. Because at the time of filing the bill in equity the defendant corporation was insolvent. Second. Because chapter 85, Public Laws, 1905, under which the receiver purported to have been appointed, was in effect an insolvent law. Third. Because when said receiver purported to have been appointed, the United States Bankruptcy Act of 1898 had been and was then in operation, and suspended and rendered inoperative the aforesaid chapter 85 of the Public

Laws of 1905, which in practical effect was an insolvent law, and deprived the state court of any jurisdiction in the matter of appointing a receiver by virtue of said chapter 85. Hearing was had on the petition and the prayer of the petition was denied.

*Held :* 1. That at the time the bill in equity was filed, the defendant corporation was insolvent.

2. That chapter 85, Public Laws, 1905, under which the receiver purported to have been appointed was in effect an insolvent law.

3. That the United States Bankruptcy Act of 1898 being in operation when said chapter 85 was enacted, said chapter 85 never went into operation.

4. That under said chapter 85 the state court had no jurisdiction in the matter of appointing a receiver by virtue of said chapter.

On exceptions by Georges National Bank, Petitioner to dismiss proceedings appointing receiver, etc. Sustained.

The Port Clyde Development Company is a corporation organized in 1902, under the laws of Maine, and located at Portland.

On February 14, 1904, the Georges National Bank of Thomaston, Knox County, commenced an action at law against the defendant corporation. The declaration in the writ is as follows :

"In a plea of the case, for that the said defendant, at said Thomaston on the tenth day of February in the year of our Lord one thousand nine hundred and four by its note of that date, by it duly signed, for value received, promised said bank to pay it or its order, the sum of four thousand dollars in thirty days after the date thereof and said plaintiff says that said thirty days have long since elapsed, whereby an action hath accrued to the plaintiff to have and recover the same with interest of said defendant. Yet the said defendant, though requested has not paid the same, but neglects so to do ; to the damage of the said plaintiff (as it says), the sum of six thousand dollars which shall then and there be made to appear, with other due damages."

This writ was returnable at the April term, 1906, of the Supreme Judicial Court, Knox County. A general attachment of the defendant corporation's real estate was made on this writ on the day of its date. February 28th, 1906, service of this writ was made on W. A. Moody, president of the defendant corporation.

On the 13th day of March, 1906, William A. Moody, the said president of the defendant corporation, and one of its stockholders

under the provisions of chapter 85, Public Laws, 1905, filed in the Supreme Judicial Court, Cumberland County, a bill in equity against the defendant corporation, which said bill, omitting formal parts, is as follows:

"William A. Moody of St. George, County of Knox, State of Maine, complains against the Port Clyde Development Company located at Portland, Cumberland County Maine, and says:—

"1.   That said William A. Moody is a stockholder and creditor of said Port Clyde Development Company:

" 2.   That said Port Clyde Development Company is a corporation organized and existing by virtue of the laws of the State of Maine; that said corporation by its vote, is located at Portland aforesaid:

" 3.   That said Port Clyde Development Company has held all, including its last stockholders' meeting, in said Portland; that its property is situate in the town of St. George, County of Knox, State of Maine:

" 4.   Said William A. Moody is informed and believes, and therefore alleges upon information and belief, that said corporation is in imminent danger of insolvency:

" 5   Said William A. Moody is informed and believes, and therefore alleges upon information and belief, that the estate and effects of said Port Clyde Development Company, through attachment and litigation, and other proceedings hostile to the interests of said Moody and other unsecured creditors and stockholders, are in danger of being wasted or lost:

" Wherefore, inasmuch as said plaintiff is remediless except in equity, he prays that full, true and certain answers may be given to all the premises and paragraphs herein set forth, but not under oath, that said Honorable Court, if it finds that sufficient cause exists, will issue an injunction, both temporary and permanent, restraining said corporation, its officers and agents, from receiving any moneys, paying any debts, selling or transferring any assets of the corporation, or exercising any of its privileges or franchises until further order of the Court.

"And that said Court may also appoint one or more receivers to

wind up the affairs of the Company, and also that said Court may make all decrees and orders that may be proper and necessary under the provisions of chapter 85 of the Public Laws of the State of Maine for 1905, or under any other law relating to the subject matter of this bill of complaint.

" May it please your Honors to grant unto your orator, this plaintiff, most gracious writ of subpoena in the form provided by law, directed to said Port Clyde Development Company.

" And as in duty bound your orator will ever pray."

To this bill the defendant corporation filed its answer which, omitting formal parts, is as follows:

" And now the said Port Clyde Development Company, answering to the bill of complaint of William A. Moody against said company dated March 8th, 1906, says:

" 1.   The truth of the allegation contained in paragraph one of said bill of complaint is admitted:

" 2.   The truth of the allegation contained in paragraph two of said bill of complaint is admitted:

" 3.   The truth of the allegations contained in paragraph three of said bill of complaint is admitted.

" 4.   The truth of the allegation contained in paragraph four of said bill of complaint is admitted:

" 5.   The truth of the allegations contained in paragraph five of said bill of complaint is admitted:

" And said corporation prays that in this proceeding right and justice may be done all parties interested, and that said corporation may be fully protected."

Hearing was had on bill and answer on the 16th day of March, 1906, and after hearing the presiding Justice made a decree which, omitting formal parts and parts not material to this case, is as follows:

" This cause came on for hearing on bill and answer, by agreement, this sixteenth day of March, 1906, the parties being represented by counsel, and all the allegations of the bill are admitted by the answer; and upon consideration thereof, it is ordered, adjudged and decreed that the allegations in said bill that said corporation is in

imminent danger of insolvency and that the estate and effects of said Port Clyde Development Company, through attachment and litigation, and other proceedings hostile to the interests of said complainant Moody and other unsecured creditors and the stockholders, are in danger of being wasted or lost, and also each and every allegation in said bill of complaint are sustained and that a receiver should be appointed, and by agreement of parties, Chester W. Teel of St. George in the County of Knox, Maine, a suitable person, is hereby appointed such receiver of said defendant corporation, to wind up the affairs of said corporation, with power to institute or defend suits at law or in equity in his own name as receiver, to demand, collect and receive all property, books, papers and assets of said corporation, to sell, transfer or otherwise convert the same into cash ; and to conduct and carry on the business of said corporation as ordered by this court, and to hold and use the assets of this corporation subject to and under the further order of this court.

"Also that pending the proceedings in this cause said defendant corporation, its officers and agents, be and they hereby are restrained from receiving any moneys, paying any debts, selling or transferring any assets of said corporation or exercising any of its privileges or franchises until the further order of this court."

At the April term, 1906, of the Supreme Judicial Court, Knox County, the return term of the writ in the aforesaid action at law, the defendant corporation filed an answer to said action at law setting forth the aforesaid equity proceedings and the decree appointing a receiver and praying "that as said decree is in full force a sufficient suggestion hereof may be spread upon the docket and records of this court, and that this plaintiff may be directed and allowed to proceed according to the decree, a copy of which is hereto attached, as aforesaid, and that as this said plaintiff has an attachment dated Feb. 14, 1906, at four o'clock in the afternoon, and none other, the date of said attachment being less than thirty days prior to the filing of said bill in equity in said court at Portland, Cumberland County, and no farther proceedings be had or allowed, by said court in Knox County, touching the matter and that this cause may be dismissed on account of the equity proceedings herein set forth." The action at law was then continued.

On the 11th day of August, 1906, the Georges National Bank, the plaintiff · in the aforesaid action at law, filed in the Supreme Judicial Court, Cumberland County, a petition directed to the Justice who made the decree in the aforesaid equity proceeding, which said petition, omitting formal parts is as follows :

"The Georges National Bank of Thomaston Maine respectfully represents that it is a creditor of the Port Clyde Development Co., of St. George Knox Co. Maine, to the extent of $4,000 money loaned. That on Feb. 14, 1906, said bank brought a suit against said Development Co. and William H. Moody, a signer of said note, made an attachment of the real estate of said Development Co. On March 2, Isaac E. Archibald having a judgment against said company attempted to sell said real estate on an execution, but as said bank claims, illegally and that said sale and levy are invalid. Subsequently said Development Co. was placed in the hands of a receiver on the petition of William A. Moody, its general manager.

"Said action of said bank is pending in the Supreme Judicial Court for Knox County, and will be in order for trial at the September term, when it claims that it should have judgment and protect its lien.

"Said Development Co. files a defence claiming that it is in the hands of a receiver and that the attachment of said bank is dissolved, and that the company is insolvent, and that the receiver who was appointed should sell the property and pay to the creditors a pro-rata percentage distributing the assets among the creditors in the nature of a dividend in insolvency proceedings. Your petitioner says that said proceedings are illegal and the acts of the receiver would be in violation of the National Bankruptcy Law ; that the proceedings under which the said receiver acts and the statute under which the proceedings were instituted in which he is appointed receiver is in the nature of an insolvent law which cannot exist during the existence of the National Bankruptcy Act.

"Wherefore the Georges National Bank respectfully moves that the proceedings appointing said receiver and said receiver-ship be dismissed and said bank be allowed to prosecute its suit without any interference or objection on the part of the alleged receiver."

After notice given to the receiver, a hearing was had on the petition before the Justice to whom the petition was directed who denied the prayer of the petition. Thereupon the petitioner, the Georges National Bank, took exceptions.

*George E. Grant,* for plaintiff, William A. Moody.

*James O. Bradbury,* for defendant.

*Joseph E. Moore,* for petitioner, Georges National Bank.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J. The Port Clyde Development Company is a corporation established under the laws of Maine in 1902. The purposes of the corporation were very broad including the right to carry on a general grocery business; and general ship building and ship repairing business; to own and operate saw mills; to carry on a general fish and canning business; to carry on a general ice business; to carry on a general real estate business; to carry on a general teaming, transportation, express and forwarding business; and to do all things that may be incidental to the accomplishment of the foregoing objects.

On the 14th day of February, 1906, the Georges National Bank of Thomaston attached the real estate of said company and on the 28th day of February, made service of a writ upon W. A. Moody, its president.

On the 13th day of March, 1906, William A. Moody, who is identical with W. A. Moody, upon whom the writ was served, filed a bill in equity under the provisions of chapter 85 of the Public Laws of 1905, alleging among other things, that he was a stockholder and creditor of the company; that he was informed and believed, and therefore alleged, that the corporation was in imminent danger of insolvency, and that the estate and effects of the company, through attachments and litigation, and through proceedings hostile to the interests of said Moody and other unsecured creditors and stockholders, were in danger of being wasted or lost. The bill in its prayer among other things, asked for an injunction, both temporary and permanent, restraining the corporation, its officers and agents,

from transacting any business until the further order of the court and also for the appointment of one or more receivers to wind up the affairs of the company, and that the court would make all decrees and orders that might be proper and necessary under the provisions of chapter 85 of the Public Laws of 1905, or under any other law relating to the subject matter of the bill of complaint.

On the 12th day of March, 1906, the company appeared by attorney, admitted the truth of every allegation in the bill and on the 16th day of March, 1906, a decree of the court was filed stating that the case come on for hearing and on bill and answer by agreement, the parties being represented by counsel, and that all the allegations of the bill were admitted in the answer.  Whereupon it was "ordered, adjudged and decreed that the allegations in said bill, that said corporation is in imminent danger of insolvency and that the estate and effects of said Port Clyde Development Company through attachment and litigation, and through proceedings hostile to the interests of said complainant Moody and other unsecured creditors and the stockholders are in danger of being wasted or lost, and also each and every allegation in said bill of complaint, are sustained, and that a receiver should be appointed  .  .  .  .  to wind up the affairs of said corporation with power to institute or defend suits at law in equity or in his own name as receiver, to demand, collect and receive all property, books, papers and assets of said corporation, to sell, transfer or otherwise convert the same into cash ; and to conduct and carry on the business of said corporation as ordered by this court, and to hold and use the assets of this corporation subject to and under the further order of this court."

On the 11th day of August, 1906, the Georges National Bank, plaintiff in the above mentioned suit, filed a petition in the nature of a bill in equity in the Supreme Judicial Court, directed to the Justice thereof who made the above decree, alleging that it was a creditor of said bank to the extent of $4000 for money loaned ; that on Feb. 14, 1906, it brought a suit against said company and William A. Moody signer of the note, and made an attachment on the real estate of said company ; that subsequently the company was placed in the hands of a receiver on the petition of said Moody ;

that said action of said bank was pending in the Supreme Judicial Court for Knox County and would be in order for trial at the September term; that said company filed a defense claiming that it was in the hands of a receiver and that the attachment of said bank was dissolved; that the company was insolvent and that the receiver should collect and distribute the assets of the company and pay the creditors a pro rate percentage in the nature of a dividend in insolvency proceedings.

The petitioner further alleged that the proceedings were illegal, and that the acts of the receiver would be in violation of the National Bankruptcy Law; that the proceedings under which the receiver was acting and the statute under which the proceedings were instituted, in which he was appointed receiver, were in the nature of an insolvent law which could not operate during the existence of the National Bankruptcy Act, and moved that the proceedings of appointing said receiver and said receiver-ship, be dismissed; that said bank be allowed to prosecute its suit without any interference or objection on the part of the alleged receiver.

Notice was ordered upon this petition and a hearing had on the 11th day of September, 1906, and the prayer of the petitioner denied. To this decree, denying the petition, the petitioner excepted and his exceptions were allowed.

The petitioner contends that upon this state of facts, and a proper interpretation of the statute under which the receiver was appointed the court had no jurisdiction in the matter of appointing the receiver.

I.    Because at the time of filing of the petition for the receiver, the Development Company was insolvent.

II.    Because the Act of 1905 under which the receiver purported to have been appointed, was in effect an insolvent law.

III.    Because when said receiver purported to have been appointed, the National Bankruptcy Law had been, and then was, in operation, and suspended and rendered inoperative the statute of 1905, which in practical effect was an insolvent law, and deprived the state court of any jurisdiction in the matter of appointing a receiver by virtue of such statute.

In the future discussion of this case the petitioning bank will be

called the plaintiff, and the Port Clyde Development Company, the defendant.

The first contention of the plaintiff, that the defendant, at the time of its petition for a receiver, was insolvent, appears to be well established, not only by the facts, but admitted by the allegations in the defendant's bill. Item 4 alleges imminent danger of insolvency. Item 5 goes further and avers that the estate and effects of the defendant company, through attachments and litigation and other proceedings, are in danger of being wasted or lost. Item 4 does not technically allege insolvency, and while item 5 does not use the word "insolvency" to express the condition of the company, it nevertheless employs, to express that condition, the language which defines the legal meaning of the word "insolvency." In other words, the defendant instead of using the term, uses the definition. But the language of the bill used to express this condition so nearly comports with the phraseology employed in *Morey* v. *Milliken*, 86 Maine, 464, to define insolvency, that a reasonable inference might suggest it to have been intended to follow that opinion. This case declares that insolvency exists in its application to persons engaged in commercial pursuits " when they can no longer continue in the ordinary course, securing to the existing creditors an equal division of the assets before they shall be wasted and frittered away in a hopeless struggle under conditions which compel disaster in the end."

The analogy between this definition of insolvency and the language of the bill describing the condition of the defendant, will readily be seen by comparison. The bill says, that the assets "are in danger of being wasted or lost." The case says, that insolvency exists when the assets are in danger of being "wasted and frittered away." The phrases quoted are indentical in meaning. The facts also clearly bring the defendant within the other definition found in this case that insolvency exists when a party is unable "to pay his debts as they become due in the ordinary course of business." It will also be observed that the answer of the defendant does not traverse the allegation of insolvency averred in the plaintiff's petition, but by its silence confesses the truth thereof and seeks to avoid its effect by averring the appointment of a receiver under the Act of 1905.

That the defendant was insolvent, may be regarded as established, not only by the facts but by the pleadings.

The insolvency of the defendant having been established, we have occasion to examine the second contention of the plaintiff, that the Act of 1905, under which the receiver for the defendant purported to have been appointed, was in effect an insolvent law for the settlement of the estate of the corporation, for which a receiver might be appointed under the act.

Section 1 clearly sets forth the purpose for which the chapter was enacted. It provides: "Whenever any corporation shall become insolvent, or be in imminent danger of insolvency, or whenever through fraud, including the gross mismanagement of its affairs, or through attachment, litigation or otherwise, its estates and effects are in danger of being wasted or lost  .  .  .  .  upon application of any creditor or stockholder by a bill in equity filed in the Supreme Judicial Court  .  .  .  .  the court may issue both temporary and permanent injunction restraining the corporation from doing the business of collecting and disbursing funds, "and may at any time make a decree dissolving such corporation."

We have no occasion at this time to consider the clauses of the Act which apply to a corporation whose charter has expired or been forfeited. We are considering only the clauses above recited. Whenever, therefore, a corporation falls within that proviso of the Act when its estate is in danger of being wasted or lost, it then becomes insolvent. The phraseology of the Act, as well as that of the bill, is practically identical with the language of the opinion, in *Morey* v. *Milliken*, supra, employed to define the meaning of the word "insolvency." The Act of 1905 was clearly intended, in the language of the opinion, "for the liquidation of business interests when they can no longer continue in the ordinary course." The scheme of the Act was to accomplish this end. Its purpose could not have been more plainly stated. The law can be invoked when, in the language of the Act, "its estates and effects are in danger of being wasted or lost." It is perfectly obvious that the clauses of the section now under consideration, were intended to operate upon those corporations that had arrived at that state of financial decay which the law defines as "insolvent."

Section 2 provides that the court may appoint one or more receivers "to wind up the affairs of the company" and that all attachments made within thirty days before the filing of the bill in equity wherein a receiver is to be appointed, shall thereupon be dissolved. The first provision which authorizes the receiver to wind up the affairs of the company, confers upon him as an officer of the court authority to take possession of the estate of the defendant, collect all of its debts and distribute all its assets thereby obliging the creditors to either accept the dividend in full, discharge their claim, or lose it. As a natural corollary of the first proviso, and having the form and analogy of the bankrupt law, the second proviso follows which vacates all attachments made within thirty days.

Section 3 invests the receiver with plenary power over all the assets of the company and he is required to report to the court from time to time, and to distribute the assets as provided in sec. 79, chapter 47. The allusion to this section has the effect of adopting it as a part of section 3, mutatis mutandis. This section clearly applies to the settlement of an insolvent estate.

Section 4 is, in terms, an insolvent provision. We quote it in full. "Whenever a receiver is appointed as above, the court shall limit a time, not less than four months, of which decree notice shall be given, within which all claims against said corporation shall be presented, and make such order for the manner of hearing and proving same as may be just and proper, and all claims not so presented shall be forever barred."

The chief difference between the provision of this section and that of the United States Bankruptcy Law is, that the latter gives a year and the former only four months, as the time within which all claims against the corporation shall be presented, and that all claims not so presented shall be forever barred.

While chapter 85 of the laws of 1905 is not an insolvent law in title or express terms, it yet operates as such in all the essential features of taking charge of the property ; bringing suits in law or equity; discharging the liabilities ; barring all claims not presented ; and distributing the assets of the corporation coming into the hands of the officer appointed by the court under its provisions.

Having analyzed the several sections of the Act for the purpose of determining their analogy to, and effect in comparison with, the provisions of the bankrupt law, we will now refer to the decisions of the different courts, state and federal, pertinent to the proposition under discussion.

It may be well at this point to further observe that the decision of the case at bar applies only to the operation of those statutes, or parts of statutes, which are calculated to perform the functions of an insolvent law. Whether receivers may be appointed to wind up the affairs of a corporation, or a debtor may make an assignment for the benefit of his creditors, under any other provisions of law, statute or common, we do not pretend to decide.

The principle of law applicable to the case under consideration is clear and succinctly stated in 5 Cyc. 240, D. Note 16 ; "So far as the state law administers upon the estate of the insolvent as a proceeding in the courts, the proceeding deriving its potency and force from the law itself and not from the voluntary act of the debtor, and where the estate is wound up judicially and the debtor discharged, the state law is undoubtedly suspended by a national bankruptcy act, ex proprio vigore, as to all persons affected by the terms of the latter." It will be seen, however, that it is not an essential element of an insolvency law that the debtor be discharged.

*Lyman* v. *Bond*, 130 Mass. 291, is a case in which the defendant, owing the plaintiff the sum of $1000 in the form of a note, made an assignment under a New Hampshire statute for the benefit of all his creditors. The assignment was in due form. The plaintiff did not join the assignment but proved his claim under the statute and received his dividend, a pro rata share of the estate from the assignee. The defendant contended that the plaintiff was barred by his action in receiving the dividends, upon his claim.

The opinion of the court in full was: "The plaintiff was not barred of his action by any agreement of his own ; because he has made no agreement to that effect. He is not barred by the proceedings under the statute of New Hampshire; because if such should be the effect of proceedings under that statute, which we need not

now decide, it is an insolvent law, the operation of which was suspended during the existence of the bankrupt act of the United States." The application of this opinion is that if the plaintiff had been barred by the statute of New Hampshire, then the statute would have been an insolvent law. The Act of 1905, chapter 85, does expressly bar all claims not presented in accordance with section 4. It is therefore in effect under this opinion, an insolvent law. The New Hampshire act, however, did not pretend to be an insolvent law, but simply a provision regulating an assignment for the benefit of creditors.

*Mauran et als.* v. *Crown Carpet Lining Co.*, 23 R. I. 324, is a case exactly in point. The act for the appointment of a receiver for the corporation, the essential features of which are quoted in the opinion, are practically identical with the Act of 1905. Upon representation " that the estate and effects of said corporation are being misapplied and are in danger of being wasted and lost and praying that said corporation might be dissolved " a receiver was appointed.

This is practically the language of section one of our own statute. It will be observed also that the petitioners for the appointment of a receiver in this case were also stockholders and creditors. The court held that this proceeding in the state court resulting in the appointment of a receiver was practically an insolvency proceeding. Its object was to collect and distribute its property in the estate, at least among its creditors. It was commenced by stockholders and creditors because its estate was being misapplied and was in danger of being wasted. The decree appointing a receiver was assented to by the corporation and while the petition does not in form allege insolvency, yet the cause alleged, the action taken, and the fact that in proceedings in voluntary bankruptcy filed twelve days after the preferring of the petition in the state court for a receiver, it was declared bankrupt by the U. S. Bankruptcy Court, all show that the corporation was insolvent and that the proceeding in the state court was but an attempt to forestall action in the U. S. Bankruptcy Court, and for some reason not known to the court, to have its affairs settled by the state tribunal.

It is unnecessary to give any analysis to show the precise analogy, in law and fact, of this case with the case at bar.

In re *Storck Lumber Company,* 114 Fed. Rep. 360, is a case involving a petition for the appointment of a receiver under a Maryland statute which provided for the dissolution of a corporation, and the appointment of a receiver of its estate and effects, who should be trustee for the benefit of the creditors and stockholders and who should act under the direction of the court. The corporation filed its answer admitting the truth of the allegations in the bill and consented to the appointment of a receiver; and on the same day the court entered its decree appointing receivers who were authorized to take possession of all the assets, collect the outstanding debts and convert all its property into cash and bring the same into court for distribution to the creditors and stockholders according to their legal rights. The court held that the statute authorizing this transaction was in effect a state insolvent law and superceded by the Bankrupt Act of 1898. This case is also practically identical with the case at bar.

The contention might here be raised that a statute, in order to be regarded as an insolvent law, must provide for the discharge of the debtor, and that, inasmuch as the law of 1905 does not so provide, it lacks an essential feature of such a law. But such is not the interpretation given by the courts.

In re *Merchants Insurance Company,* 17 Fed. Cases No. 9441, is in point. The company was subject to state control under the insurance laws. The state statute did not provide for the discharge of debts and the court held that to be no defense as the winding up of the corporation discharged the debts, and that the statute was to all intents and purposes an insolvent law, although it may not authorize a discharge of the debtors from further liability on its debts.

*Harbaugh, Assignee,* v. *Costello et al.,* 184 Ill. 110, is a case involving an Illinois assignment act. The court hold that this was an insolvent law, and go on to say ; "It is true, that an insolvent law is a law for the relief of creditors by an equal distribution among them of the assets of the debtor, but does not necessarily involve the discharge of the debtor ; while a bankruptcy law secures the relief of the insolvent debtor by his discharge.

In re *Salmon & Salmon,* 143 Feb. Rep. 395, decided in 1906, involved the winding up of a bank under the state laws of Missouri,

and the direct issue was whether it was an insolvent law.   The creditors contended that the Missouri statute under which the proceeding was instituted in the state court was not an insolvency law but an act under what is known as the reserve power or police power of the state for the purpose of exercising visitorial supervision of the banking institutions of the State for the welfare of its citizens.   But the court held that it was in legal effect an insolvent law, and, in regard to the necessity for a provision for the discharge of the debtor, said " to render a state insolvency law inoperative because in contravention of the federal bankrupt act, it is not essential that the state act shall contain a provision for discharge of the debtor." See authorities cited.

It is here proper to observe that the last three cases apply, not only to the general proposition that the state law, whatever its name, authorizing a court to appoint an officer to take charge of the estate of a corporation and collect and distribute its assets, and that bars the debts which are not filed within the time ordered by the court, *is* an insolvent law, but also, that it is not necessary for the act, in order to operate as such a law, to provide for the discharge of the debtor. The Act of 1905 makes no provision for the discharge of the corporation from its debts and therefore comes within the doctrine of these cases.

While there are numerous cases, state and federal, in harmony with the opinions in the above citations and none, so far as we have been able to discover, opposed to them, we deem it unnecessary to further cite authorities in confirmation of the plaintiff's second contention, and regard it as a well settled rule of law, that a state statute which authorizes the court to appoint an officer, whatever his title, to take charge of an insolvent estate with full power to bring suits in law or in equity, discharge the liabilities and distribute the assets either in full or upon a percentage of the claims proved, and which also bars all claims not proven within the time specified by the statute, or by the order of the court, is in effect and practical operation, an insolvent law.

Such we determine to be the Act of 1905 under consideration. Having determined that this Act is in the nature of an insolvent law,

we now come to the defendant's third proposition, that, when the receiver purported to have been appointed, the National Bankruptcy Law had been, and then was, in force, and suspended and rendered inoperative, the statute of 1905, which in practical effect was an insolvent law, and deprived the state court of any jurisdiction in the matter of appointing a receiver by virtue of such statute. This contention it is evident, raises the question of procedure as to whether jurisdiction of the state court can be attacked collaterally without invoking the aid of the United States Bankruptcy Law. This question seems to be settled in the affirmative by several very recent decisions in our own State, and by many decisions of other state and federal courts.

The effect of the National Bankruptcy Act in its operation of suspending the state insolvency law and ousting the jurisdiction of the state court by virtue of such law, involves but a single proposition, as the question of suspension of the state law also embraces the question of jurisdiction.

*National Bank* v. *Ware*, 95 Maine, 388, decided in 1901, is a case where the defendant went into voluntary insolvency under our state law. Composition papers were then prepared and having been signed by the number and amount of creditors required by the insolvency law, the debtor was granted a certificate of discharge according to the provisions thereof. Subsequent to these proceedings the plaintiff brought action upon two promissory notes. The defendant contended as a defense to this action that he was effectually discharged from these notes by the decree of discharge dated Nov. 27, 1898, in the insolvency proceedings. But the court held that the insolvency proceedings were taken July 8, 1898, at the time when the insolvency court had been deprived of all power and jurisdiction in the matter by the United States Bankruptcy Act enacted and put in force July 1, 1898.

*Littlefield, Assignee, in Insolvency* v. *Gay*, 96 Maine, 422, decided in 1902, is a case in which the issue with respect to the operation of the United States Bankruptcy Act to suspend the state insolvency law, and oust the jurisdiction of the court, was sharply raised and contested.

Blackington, the insolvent debtor, owing less than $1000, was petitioned into insolvency in 1899 by his creditors, while the U. S. Bankruptcy Law was in force. The State Insolvency Court took jurisdiction, decreed him insolvent and appointed the plaintiff assignee. This action is to set aside a conveyance by Blackington as a preference under the state law. This case holds that under the bankrupt law, Blackington could have gone into bankruptcy voluntarily but could not be forced by his creditors under involuntary proceedings. He was asked to go in and refused. Under this state of the law and facts, it was contended that the insolvency law might be invoked. But the court held that the test of jurisdiction under the state law did not rest upon the volition of the debtor, but that "if his person or property are or *may* be subject to the bankruptcy law, then as to him and his possessions, the state insolvency law is in abeyance and powerless. . . . . That where a person falls within the purview of the bankrupt act, whether by voluntary or involuntary proceedings, the state insolvent law must be silent." And finally the court say, " It follows that the insolvent court was without jurisdiction in the case, and the appointment of plaintiff as assignee was unauthorized and void. He therefore has no standing in court."

It should be here observed that neither of these Maine cases involve contests between officers appointed under the state and United States laws, but are both brought by parties who attacked the jurisdiction of the state court on the ground that the state law was suspended and superceded.

*Wescott* v. *Berry et al.,* 69 N. H. 505, is another case precisely in point, and almost identical in its facts with the case at bar. It involved a bill in equity, alleging that the plaintiffs are a corporation and organized under the laws of the State, that they were decreed to be insolvent debtors upon a creditor's petition, filed in the Probate Court for the county, October 20, 1898, under the provisions of the state law, that the defendant Berry was appointed messenger and as such claimed the plaintiff's property, and that the proceedings in the Probate Court were void. The court held that the Act of Congress approved July

1, 1898, entitled an act to establish a uniform system of bank-
ruptcy so far superceded the insolvency laws of the state from
the time of its passage as to deprive the Probate Court of jurisdic-
tion to entertain petitions filed after that date.    See also *Par-
menter Mfg. Co.* v. *Hamilton,* 172 Mass. 178.

The discussion of this case up to this point has proceeded
upon the assumption that the defendant corporation came within
the Bankruptcy Act with respect to the institution of involuntary
proceedings, section 4, which provides that "any corporation engaged
principally in manufacturing, trading, printing, publishing, mining
or mercantile pursuits owing debts to the amount of $1000 or
over may be adjudged an involuntary bankrupt upon default or
an impartial trial, and shall be subject to the provision and entitled
to the benefits of this act."    That the defendant corporation comes
within the scope of this provision amply appears from the state-
ment of facts in the first part of this opinion, and also, by the
allegations of the plaintiff's bill and the admissions by the defend-
ant's answers.

But notwithstanding this fact, the proposition might be plausi-
bly suggested that a corporation which cannot become a voluntary
bankrupt should be permitted to take advantage of a state law giving
it authority, of its own motion, to wind up its affairs, by dissolution,
collection of debts and distribution of assets.    But the proposition
is not tenable.    That the defendant is denied the right to become a
voluntary bankrupt is held to be immaterial in this class of cases:
*Mauran et als.* v. *Crown Carpet Lining Co.,* 23 R. I., *Harbaugh,
Assignee,* v. *Costello et als.,* 184 Ill. already cited, were each cases
involving the appointment of receivers for corporations.

It has been declared in the recent case, in re *Watts* v. *Sachs,* 190
U. S. 1, that "the operation of the bankruptcy laws of the United
States cannot be defeated by insolvent commercial corporations apply-
ing to be wound up under state statutes."

Upon the proposition that the insolvency law should take jurisdic-
tion where voluntary proceedings cannot be instituted under the bank-
rupt act, the point being expressly raised, our own court, in *Little-
field* v. *Gay,* 96 Maine, supra, have held that the jurisdiction of the

state court did not rest upon the volition of the debtor.    It would seem therefore to be immaterial whether the debtor would not, as in the case cited, or could not, take advantage of the bankrupt act. But a complete answer to this proposition in the case at bar is found in the fact that the creditors of the defendant, if they deem it necessary to protect their interest, may institute involuntary proceedings.

Our conclusion is that chapter 95 of the laws of 1905, with respect to the clauses herein considered is in effect an insolvent law and is suspended and superceded by the National Bankrupt Act of 1898, as to all insolvent corporations, whose property may be subject, by either voluntary or involuntary proceedings, to the authority and jurisdiction of said act.

The only remaining question to be considered is the mode of procedure adopted by the plaintiff in its attack upon the jurisdiction of the state court.    But no difficulty in this respect seems to be apparent.    The very foundation of judicial proceedings is jurisdiction.    The question of jurisdiction may therefore be raised at any stage of the proceedings by any suggestion that will apprise the court of the want thereof.

Our court have said in *Powers* v. *Mitchell*, 75 Maine, 364, "When it appears to the court, that they have no jurisdiction of the case before them, they will not proceed in the suit but will stay all further proceedings, though the objection is not taken by plea to the jurisdiction.    *Lawrence* v. *Smith*, 5 Mass. 362.    The objection to want of jurisdiction may be taken advantage of at any stage of the proceedings."

That the creditor is a proper party to raise the question of jurisdiction, see in re *Reynolds*, 20 Fed. Cases, No. 11723.    This case arose under the Rhode Island statute hereinbefore referred to.    The creditor appeared to oppose Reynold's petition for the benefit of the insolvent laws of the state and filed a motion to dismiss the petition upon the ground that the jurisdiction of the court had been suspended by the bankruptcy act.    The motion was granted and the method of procedure not questioned.

*Day* v. *Bardwell et al.*, 97 Mass. 246, is a case involving precisely the same mode of procedure as that pursued in the case at bar.

We are unable to discover how the creditor in the case before us could enforce a consideration of his rights in any other way.

We deem it unnecessary to discuss the possible suggestion that the Act of 1905 was passed after and while the National Bankruptcy Act was in force and that, consequently, it could not technically be suspended or superceded; but the answer to this is, that it was still-born, never had any life and never went into operation.

Our opinion is that the court should have sustained the plaintiff's petition, dismissed the receiver and discontinued the proceedings begun and prosecuted under chapter 85 of the laws of 1905.

*Exceptions sustained.*