1997 ME 110

**STATE of Maine,**

v.

**Augustina BRANCH–WEAR.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 20, 1996.

Decided May 21, 1997.

Stephanie Anderson, Dist. Atty., Julia A. Sheridan, Asst. Dist. Atty., Portland, for State.

Dostaler & Evans, Karen A. Dostaler, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Augustina Branch–Wear appeals from the judgment entered in the Superior Court (Cumberland County, *Cole, J.*) pursuant to the jury verdict finding her guilty of tampering with a victim (Class B), 17–A M.R.S.A. § 454(Supp.1996). Branch–Wear contends that the court erred in allowing the jury to determine whether the facts presented by the State allege a crime of commission or omission; that the evidence was insufficient to establish that she tampered with a victim; and that the court abused its discretion in allowing two staff members of the homeless shelter where she and her children had resided to testify against her in violation of the privileges for communications to social workers and counselors, 32 M.R.S.A. §§ 7005, 13862 (1988 & Supp.1996).[1] We disagree and affirm the judgment.

I

[¶ 2] The jury could have found the following facts. Branch–Wear is the mother of the alleged victim in a 1993 criminal prosecution for sex abuse against Branch–Wear's husband, Frank Wear. Branch–Wear took her daughter for treatment for three and one-half weeks at Boston Children's Hospital. She then took her daughter to live with her and her two other children at a homeless shelter in Massachusetts without notifying the Superior Court victim/witness assistant who had been assigned to her, Sandra Nobert, or the District Attorney's office. When Nobert first meets with witnesses she routinely tells them the importance of communicating address changes. She had met twice with Branch–Wear and her daughter that spring, once to prepare the daughter to testify before the grand jury and then to accompany her when she testified under subpoena. In two letters sent to Branch–Wear's Portland address, Nobert had made clear that the daughter would be subpoenaed for trial within the next three months and that it was important for the District Attorney's office to be informed of her current address. These letters were not returned for a failure to deliver.

[¶ 3] Nobert discovered that the daughter had been moved to Massachusetts only because trial subpoenas were returned from Branch-Wear's former Portland address unserved and the police subsequently located the family in Massachusetts. Nobert received this information on approximately September 24th, just days before Wear's case was scheduled for a trial. Later that day, she telephoned Branch–Wear to inform her that the case was going to trial on the 29th and to request that she bring her

---

1. Branch–Wear raises a fourth issue in her reply brief, arguing that the State's cross-examination of her included questions lacking foundation that were intended to induce the jury to improperly infer nonexistent facts. We will not consider an issue raised for the first time in a reply brief because the opposing party has no opportunity to respond. *See* M.R.Crim.P. 39B(c).

daughter to Portland one day prior. Nobert offered Branch–Wear transportation, housing, and food to assist her in coming to Portland, but she refused the help and told Nobert she would drive to Portland in her own car. Branch-Wear called Nobert on the 28th to say that she and her daughter would be there the next morning at 8 a.m.

[¶ 4] When Branch–Wear left the shelter slightly past 7 a.m on the morning of the 29th with her daughter and her other two children, she told her family life advocate and caseworker at the shelter, Nicole Schoen, that she was headed for Portland. Branch–Wear and her daughter never appeared for the trial. Although Nobert called the shelter three or four times that day to inquire as to their whereabouts, she was unsuccessful because Branch-Wear had not informed anyone of alternative travel plans. When she returned to the shelter that night she admitted to John Barbur, another caseworker who knew by means of weekly staff reports about the pending court case, that she had decided instead to take the children to the Plymouth Plantation historical park after passing a roadside advertisement for it. Branch–Wear decided not to take them to Maine because she did not want to deal with her daughter's distress and difficult behavior once she realized why they were traveling to Portland. Her daughter had become upset that morning when she learned that they were going to Portland, although she did not know that she was going there to testify against Wear. Branch-Wear never consulted with her daughter before deciding unilaterally that they would not attend the trial. She admitted that she had not been concerned about ensuring that her daughter had her day in court. Even after her daughter spoke to the police about Wear's alleged sexual abuse of her, and after the family moved to Massachusetts, Branch–Wear continued to maintain a relationship with Frank Wear, including telephone conversations and visits in person. Her daughter's failure to appear and testify at the trial resulted in the dismissal of the case against Wear.

[¶ 5] Branch-Wear was indicted for tampering with a victim pursuant to 17–A M.R.S.A. § 454.[2] At a pretrial hearing, the court responded to Branch-Wear's motion to dismiss by determining that the facts presented by the State warranted the jury's consideration only of whether Branch–Wear, "believing an official proceeding was pending, did induce or otherwise cause the victim, namely [her daughter], to withhold testimony, information or evidence all in violation of certain Maine law...." See 17 M.R.S.A. § 454(1)(A)(2). Branch–Wear had argued, on the basis of the State's bill of particulars, that the State was prosecuting her pursuant to a different portion of the tampering statute that protects a victim summoned by legal process. See 17 M.R.S.A. § 454(1)(B)(3). The court correctly rejected that contention.

[¶ 6] After the jury verdict finding her guilty of the charge, Branch-Wear moved for a judgment of acquittal, arguing that the court had erred by failing to make a legal determination whether the crime charged "was one of voluntary conduct or voluntary omission." Branch–Wear contended that the charge was one of voluntary omission, and that the court should have instructed the jury only on a "voluntary omission" theory of conduct. The court denied the motion and this appeal followed.

2. The statute, 17–A M.R.S.A. § 454, provides in relevant part:

1. A person is guilty of tampering with a witness, informant or victim if, believing that an official proceeding ... or an official criminal investigation is pending or will be instituted, that person:

A. Induces or otherwise causes, or attempts to induce or cause, a witness, informant or victim:

(1) To testify or inform falsely; or

(2) To withhold any testimony, information or evidence;

B. Uses force, violence or intimidation, or promises, offers or gives any pecuniary benefit with the intent to induce a witness, informant or victim;

(1) To withhold any testimony, information or evidence;

(2) To refrain from attending any criminal proceeding or criminal investigation; or

(3) To refrain from attending any other proceeding or investigation to which the witness, informant or victim has been summoned by legal process....

...

2. Tampering with a witness, informant or juror is a Class C crime. Tampering with a victim is a Class B crime.

## II

### Jury Instruction

[¶ 7]   The jury charge included the following language:

The State has alleged that on or about the 29th day of September, 1993 ... that ... Branch[-]Wear did, believing that an official proceeding was pending, induce or otherwise cause a victim, that is [her daughter], to withhold testimony, information or evidence in violation of the law.  A person commits a crime only if she engages involuntary conduct.   Voluntary conduct includes an act or voluntary omission and omission is voluntary only if that person fails to perform an act which he is physically-of which he is physically capable and which he has a legal duty and an opportunity to perform.

The statute on tampering with a victim does not distinguish between acts of commission or voluntary omission.  See 17–A M.R.S.A. § 454.   The issue arises only because Branch–Wear, in her request for a bill of particulars pursuant to M.R.Crim. P. 16(c)(1), asked the State to address whether it intended to show victim tampering by means of acts of commission or voluntary omission, both of which fall within the definition of voluntary conduct.  See 17–A M.R.S.A. § 31(1) (1983).   In its response to the request for a bill of particulars, the State asserted that Branch–Wear "committed certain acts with the intent to make [her daughter] unavailable for trial that day," including "affirmative steps" to deceive the District Attorney's office into believing a subpoena would be unnecessary and to prevent communication with her daughter on the day of the trial. The State's response also explained that in its view, "[t]his conduct constituted a substantial step toward commission of the crime of [t]ampering, it went beyond mere preparation and is strongly corroborative of the firmness of the defendant's intent."

[¶ 8]   Branch-Wear took a different view of the State's case, arguing that its description in the bill of particulars of a crime of commission was actually a description of a crime of voluntary omission because the State was

trying to prosecute someone for failure to act, namely failing to bring her daughter to Maine for trial, failing to notify the District Attorney's Office of a new address, failing to disclose her change of plans after telling Ms. Nobert that she would bring her daughter to Maine for trial.   Those failures to act alone or in combination do not constitute an "act" or "acts" which can be defined as a violation of a statute.

Branch-Wear's theory of voluntary omission involves a play on words.   Pursuant to the tampering statute, Branch–Wear was prohibited from inducing or otherwise causing a victim to withhold any testimony, information or evidence.   The "failures to act" described by Branch–Wear all involved, in the State's view, acts of evasion (e.g., taking her daughter to Massachusetts without disclosing her whereabouts) and deceit (e.g., promising to bring her to Maine for the trial and then not doing so) that caused her daughter to withhold testimony against Frank Wear.   The State and Branch–Wear are looking at the same conduct.   They are simply describing it differently.

[¶ 9]   Branch-Wear's insistence on this voluntary omission theory of the case reflects her effort to posture the case in a way that would permit her to make legal arguments favorable to her.   Pursuant to 17–A M.R.S.A. § 31(2) an omission is voluntary "only if the actor fails to perform an act of which he is physically capable and which he has *a legal duty* and opportunity to perform." (Emphasis added.)   Focusing on the "legal duty" component of this definition of a voluntary omission, Branch–Wear wanted to argue that neither she nor her daughter had been served with a subpoena to appear for trial, and hence that she had no legal duty to bring her daughter to Portland for the trial.   To the extent that the lack of a subpoena would force the State to argue some other source of the legal duty, such as a parental duty to produce a child for trial, Branch–Wear wanted to argue that the State was impermissibly impinging on her constitutional right to protect her daughter from harm.

[¶ 10]   This effort to import a favorable concept of legal duty into the case fails for three reasons.   First, as already noted, the

State presented evidence of a crime of commission, not voluntary omission. Second, as also noted, the court had already ruled correctly prior to the trial that the State was proceeding pursuant to that portion of the tampering statute which does not require that the victim or witness subject to tampering also be subject to a subpoena to attend an official proceeding. Third, the State never relied in its prosecution on a parental duty of Branch–Wear to produce her daughter for the trial. Instead, it relied on the general duty set forth in the tampering statute itself, applicable to all persons subject to the criminal law of Maine, to not engage in conduct that induces or causes a victim to withhold testimony, information or evidence.

[¶ 11] Given these considerations, the defendant's theory of a voluntary omission was irrelevant to the State's charge that the defendant had acted affirmatively to induce or otherwise cause her daughter to withhold testimony against Wear. Although the court should not have instructed the jury on a voluntary omission, the error only disadvantaged the State by creating potential confusion among the jurors as to the relevance of the voluntary omission theory. Despite this potential for confusion, the record demonstrates that the jury's verdict was not predicated on a voluntary omission or "failure to act" theory. When the jury requested an instruction whether Branch–Wear's promise to bring her daughter to Portland had created a duty to act, the court answered that it had not. The jury already knew that mother and daughter were not subject to any subpoena. The State never argued a parental duty to act. The verdict, therefore, reflected the jury's conclusion that Branch–Wear's acts of commission violated the general duty established by 17–A M.R.S.A. § 454(1)(A)(2) not to tamper with a victim.

[¶ 12] Finally, Branch–Wear argues for the first time on appeal that even if the only valid theory of the case is that of commission, the court erred in failing to instruct the jury that as a parent she had a right to refuse to bring her daughter to Maine if she determined that not testifying was in her daughter's best interest. Without deciding that this argument raises constitutional concerns, and considering all of the evidence that Branch–Wear was motivated by a desire to protect Frank Wear rather than her daughter, we conclude that the court did not commit obvious error by omitting a parental right instruction from the jury charge. See *State v. Mair*, 670 A.2d 910, 913 (Me.1996) (we review jury instruction challenged for the first time on appeal in context of charge as a whole to determine whether it constitutes obvious error, defined as highly prejudicial error tending to produce manifest injustice); *State v. Fowler*, 676 A.2d 43, 44 (Me.1996) (review for obvious error affecting substantial rights); M.R.Crim. P.52(b).[3]

## Sufficiency of the Evidence

[¶ 13] When reviewing for a sufficiency of the evidence, we examine the record in the light most favorable to the State to determine whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged. *State v. Marden*, 673 A.2d 1304, 1311 (Me.1996). A conviction may rest entirely on circumstantial evidence. *State v. Hayes*, 675 A.2d 106, 109 (Me.1996). The weight to be given to the evidence and determinations of witness credibility are the exclusive province of the factfinder. *State v. Harper*, 675 A.2d 495, 497 (Me.1996).

[¶ 14] The State prosecuted Branch–Wear on the theory that she was guilty of acts of commission in violation of

---

3. Branch–Wear's parental right theory has overtones of a competing harms defense, which might permit an argument based on a concern for imminent physical harm to the child. The relevant statutory provision states in pertinent part:

Conduct which the actor believes to be necessary to avoid imminent physical harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged. The desirability and urgency of such conduct may not rest upon considerations pertaining to the morality and advisability of such a statute.

17–A M.R.S.A. § 103(1) (1983). Branch–Wear did not frame her argument, however, in the terms of this statutory defense.

the statutory provision making it a crime to induce or otherwise cause, or attempt to induce or cause, a victim to withhold testimony, information or evidence, when the alleged tamperer believes that an official proceeding or criminal investigation is pending. 17–A M.R.S.A. § 454(1)(A)(2). Contrary to Branch–Wear's arguments, the statutory provision does not require proof of the alleged victim's intent to testify, or that she has been subpoenaed. *Id.* As demonstrated by the facts recounted above, ample evidence was adduced at the trial to support the jury's determination that the State had proved beyond a reasonable doubt that after promising to produce her daughter for the trial in Portland, Branch-Wear removed her daughter from Maine to Massachusetts and took affirmative steps to prevent her from testifying at the trial of Frank Wear.[4]

### Testimonial Privileges for Counselors and Social Workers

[¶ 15] Branch-Wear argues that the court should have excluded the testimony of Barbur and Schoen pursuant to 32 M.R.S.A. §§ 7005, 13862, establishing privileges for communications between licensed social workers and licensed counselors, respectively, and their clients. We review the trial court's evidentiary rulings as to admissibility for abuse of discretion. *State v. Case,* 672 A.2d 586, 588 (Me.1996); *Hatch v. Maine Tank Co.,* 666 A.2d 90, 95 (Me.1995). Because neither Schoen nor Barbur meet the statutory definitions of social worker or counselor, *State v. Boobar,* 637 A.2d 1162, 1169 (Me.1994) (statutory privilege applies only to information disclosed to licensed professionals), and because Branch–Wear waived any privilege she may claim by making her statements to them in the presence of third parties, M.R.Evid. 510, the court did not abuse its discretion in allowing the two witnesses to testify.

4. Although some of the evidence pertains to Branch–Wear's actions in Massachusetts, it presents no jurisdictional problem. *See* 17–A M.R.S.A. § 7(1)(B) (1983)("a person may be convicted ... for any crime committed by his own conduct ... only if ... [c]onduct occurring outside this State constitutes an attempt to commit a crime under the laws of this State and the intent is that the crime take place within this State"). The State's bill of particulars carefully describes

The entry is

Judgment affirmed.

Branch–Wear's acts consistent with this jurisdictional provision. Moreover, the fact that Branch–Wear removed her daughter from Maine establishes jurisdiction pursuant to 17–A M.R.S.A. § 7(1)(A)(a person may be convicted if "[e]ither the conduct which is an element of the crime or the result which is such an element occurs within this State or has a territorial relationship to this State").