MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 103
Docket:      Yor-19-280
Argued:      May 11, 2020
Decided:     August 11, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ., and HJELM, A.R.J.
Majority:    MEAD, GORMAN, and HUMPHREY, JJ., and HJELM, A.R.J.
Dissent:     HORTON, JABAR, and CONNORS, JJ.

STATE OF MAINE

v.

EMANUEL J. SLOBODA

GORMAN, J.

[¶1]   Emanuel J. Sloboda appeals from a judgment of conviction for violating a condition of release (Class C), 15 M.R.S. § 1092(1)(B) (2020), entered by the trial court (York County, *Douglas, J.*) after a jury-waived trial. Sloboda contends that the court lacked subject matter jurisdiction over his prosecution because the violation at issue occurred in New Hampshire.[1]  We agree, vacate the conviction, and remand for dismissal of the indictment.

---

[1] Briefs of amici curiae were submitted by the Office of the Maine Attorney General; AEquitas; and Lawrence C. Winger, Esq.

2

## I. BACKGROUND

[¶2] In 2019, Sloboda was indicted for violating a condition of release (Class C), 15 M.R.S. § 1092(1)(B), to which he pleaded not guilty.[2] During a one-day jury-waived trial on the indictment, Sloboda challenged the court's subject matter jurisdiction based on the fact that his alleged violation occurred outside Maine, in New Hampshire. Among its findings and conclusions rendered at the end of the trial, the court determined that it had jurisdiction.

[¶3] The court also found, based on competent record evidence, that Sloboda was on preconviction bail, a condition of which was that he have no direct or indirect contact with a particular individual, when, on November 25, 2018, he violated that condition by having contact with that individual at a store in Rochester, New Hampshire. Based on these facts, the court found Sloboda

---

[2] Sloboda was also charged with aggravated assault (Class A), 17-A M.R.S. §§ 208(1)(C), 1252(4-A) (2018); domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(A) (2020); 17-A M.R.S. § 1252(4-A); and two additional counts of violating a condition of release (Class C), 15 M.R.S. § 1092(1)(B) (2020). Section 208 has since been amended, P.L. 2019, ch. 91, § 1 (effective Sept. 19, 2019), and section 1252 has since been repealed and replaced, P.L. 2019, ch. 113, § A-1 (emergency, effective May 16, 2019) (codified at 17-A M.R.S. § 1604 (2020)), but these subsequent enactments do not affect this appeal.

The State dismissed the charges of aggravated assault, domestic assault, and one count of violating a condition of release. Sloboda was found not guilty of the other charge of violating a condition of release. None of these charges is at issue in the present appeal.

guilty of the offense and sentenced him to serve six months in jail.[3]  Sloboda timely appeals.  *See* 15 M.R.S. § 2115 (2020); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

[¶4]  Sloboda contends that the trial court lacked subject matter jurisdiction because the court found that he violated the condition of release in New Hampshire.  We review de novo the trial court's subject matter jurisdiction by interpreting the criminal jurisdiction statute, 17-A M.R.S. § 7 (2020).  *See State v. McLaughlin*, 2018 ME 97, ¶ 9, 189 A.3d 262; *State v. St. Onge*, 2011 ME 73, ¶ 13, 21 A.3d 1028; *see also* M.R.U. Crim. P. 12(b)(2); *State v. Liberty*, 2004 ME 88, ¶ 7, 853 A.2d 760 (stating that the issue of the trial court's jurisdiction may be raised at any time during the pendency of the proceeding).  We first interpret the provision in accordance with its unambiguous meaning based on the plain language of the statute.  *See McLaughlin*, 2018 ME 97, ¶ 9, 189 A.3d 262.

[¶5]  A trial court's "[t]erritorial" criminal jurisdiction is limited to the seven bases for which 17-A M.R.S. § 7(1) provides:

> **1.** Except as otherwise provided in this section, a person may be convicted under the laws of this State for any crime committed

---

[3]  The judgment and commitment incorrectly reflects that the findings were reached by jury verdict rather than by the court's determination, that Sloboda pleaded guilty to the charge, and that Sloboda was convicted of a second count of violating a condition of release.

by the person's own conduct or by the conduct of another for which the person is legally accountable only if:

**A.** Either the conduct that is an element of the crime or the result that is such an element occurs within this State or has a territorial relationship to this State;

**B.** Conduct occurring outside this State constitutes an attempt to commit a crime under the laws of this State and the intent is that the crime take place within this State;

**C.** Conduct occurring outside this State would constitute a criminal conspiracy under the laws of this State, an overt act in furtherance of the conspiracy occurs within this State or has a territorial relationship to this State, and the object of the conspiracy is that a crime take place within this State;

**D.** Conduct occurring within this State or having a territorial relationship to this State would constitute complicity in the commission of, or an attempt, solicitation or conspiracy to commit an offense in another jurisdiction that is also a crime under the law of this State;

**E.** The crime consists of the omission to perform a duty imposed on a person by the law of this State, regardless of where that person is when the omission occurs;

**F.** The crime is based on a statute of this State that expressly prohibits conduct outside the State, when the person knows or should know that the person's conduct affects an interest of the State protected by that statute; or

**G.** Jurisdiction is otherwise provided by law.

*See Ginn v. Penobscot Co.*, 342 A.2d 270, 274 (Me. 1975) ("The court is created

by statute, and has that jurisdiction only which the statute has conferred upon

it, and that is a limited jurisdiction. It has no other authority." (quotation marks omitted)); *State v. Baldwin*, 305 A.2d 555, 559 (Me. 1973) ("It is elementary law that the statutes of a state have no extra-territorial force, nor do its courts have any jurisdiction of offenses committed in other states or foreign countries." (quotation marks omitted)).

[¶6] Viewed most simply, section 7(1)(A) sets out four alternatives by which a Maine court has subject matter jurisdiction in a criminal matter: when (1) conduct that is an element of the crime has a territorial relationship to Maine, (2) the result that is an element of the crime has a territorial relationship to Maine, (3) conduct that is an element of the crime occurred in Maine, or (4) the result that is an element of the crime occurred in Maine. The court found jurisdiction in this matter based specifically on one of the territorial relationship alternatives; it determined that Maine had a sufficient nexus to the crime because the relevant bail condition that Sloboda was alleged to have violated was issued in Maine as to an underlying crime committed in Maine. As 17-A M.R.S. § 7(4) states, however, territorial relationship jurisdiction exists only when it is impossible to determine where the conduct occurred in relation to the state boundary line:

> **4.** Conduct or a result has a territorial relationship to this State if it is not possible to determine beyond a reasonable doubt

that it occurred inside or outside of this State, because a boundary cannot be precisely located or the location of any person cannot be precisely established in relation to a boundary, and if the court determines that this State has a substantial interest in prohibiting the conduct or result. In determining whether this State has a substantial interest, the court shall consider the following factors:

> **A.** The relationship to this State of the actor or actors and of persons affected by the conduct or result, whether as citizens, residents or visitors;

> **B.** The location of the actor or actors and persons affected by the conduct or result prior to and after the conduct or result;

> **C.** The place in which other crimes, if any, in the same criminal episode were committed; and

> **D.** The place in which the intent to commit the crime was formed.

Because, based on the court's supported findings, it *is* possible to determine precisely where Sloboda's conduct occurred, the territorial relationship of Sloboda's crime to Maine provides no basis for jurisdiction. *See State v. Collin*, 1997 ME 6, ¶ 10, 687 A.2d 962 (vacating the trial court's employment of territorial relationship jurisdiction because there was no "reasonable doubt about the location of a boundary or the location of a person in relation to the boundary" and noting that "[t]he state's substantial interest in prohibiting the conduct is not sufficient by itself to support a finding of a territorial

relationship"). The court's reliance on territorial relationship jurisdiction was therefore error.

[¶7]   The State argues that, despite this error, we should affirm the conviction because the court had jurisdiction pursuant to one of the other two alternatives in section 7(1)(A) based on where the conduct or result element occurred. We therefore consider what constitutes a conduct element or a result element.

[¶8]  Title 17-A M.R.S. § 32 (2020) organizes the elements of a crime into four categories: "the forbidden conduct; the attendant circumstances specified in the definition of the crime; the intention, knowledge, recklessness or negligence as may be required; and any required result."[4]   A state-of-mind element is statutorily defined with reference to the mental processes of the defendant—i.e., the defendant's awareness of a risk or whether the defendant has a "conscious object."   17-A M.R.S. § 35 (2020) (defining "[i]ntentionally," "[k]nowingly," "[r]ecklessly," and "[c]riminal negligence").   This is distinguished from the "conduct" category of elements, which is the only one among the four in section 32 that could reasonably be read to refer to the defendant's physical actions.  *See* Model Penal Code § 1.13(5) (Am. Law Inst.

---

[4] We will use the phrase "state-of-mind" to discuss the third element.

1962) (defining "conduct" as "an action or omission and its accompanying state of mind, or, where relevant, a series of acts and omissions"); *Conduct*, New Oxford American Dictionary (3d ed. 2010) (stating that "conduct" means "the manner in which a person behaves"); *see also State v. Lindell*, 2020 ME 49, ¶ 19, --- A.3d --- (concluding that "the jury was entitled to interpret ['conduct'] within its common meaning"); *State v. Gladu*, 2014 ME 23, ¶ 9, 86 A.3d 1182 (stating that, "as a general rule, words and phrases that are not expressly defined in a statute must be given their plain and natural meaning and should be construed according to their natural import in common and approved usage," including according to dictionary definitions (quotation marks omitted)).

[¶9] Attendant circumstances elements refer to factors such as the status of a defendant, the age or other attributes of the victim, or the existence of prior convictions that increase the class of a crime. *See State v. Sumulikoski*, 110 A.3d 856, 858, 862-64 (N.J. 2015) (holding that the fact that the defendant had assumed responsibility for the victims as chaperone for a school trip constituted an attendant circumstance rather than conduct, and defining "status" as "a person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities, and other legal relations" (alteration omitted) (quotation marks omitted)); *Attendant*, New Oxford

American Dictionary (3d ed. 2010) ("occurring with or as a result of; accompanying"); *Circumstance*, New Oxford American Dictionary (3d ed. 2010) ("a fact or condition connected with or relevant to an event or action").

[¶10]  As to the result element, 17-A M.R.S. § 33 (2020) provides, "Unless otherwise provided, when causing a result is an element of a crime, causation may be found when the result would not have occurred but for the conduct of the defendant, operating either alone or concurrently with another cause." Thus, a result element is one that requires the defendant to have caused some specified harm or other outcome.  *See Result*, New Oxford American Dictionary (3d ed. 2010) ("a consequence, effect, or outcome of something").

[¶11]  Interpreting section 7(1)(A) against the backdrop of section 32 reveals that not all elements of a crime are relevant to jurisdiction.  Only conduct elements and result elements affect subject matter jurisdiction; if only an attendant circumstances element or a state-of-mind element occurs in Maine, Maine has no jurisdiction pursuant to section 7(1)(A).  For example, if a defendant with a Maine felony conviction then obtained possession of a firearm in New Hampshire, Maine would not have jurisdiction over the crime committed by the defendant because only the defendant's underlying felony status—the attendant circumstance—occurred in Maine.

[¶12]  In order to determine which elements of the crime of violating a condition of release should be considered in determining Maine's jurisdiction, we determine in which category—conduct, result, state-of-mind, and attendant circumstances—those elements belong.  Violation of a condition of release requires proof that the defendant is on preconviction or postconviction bail at the time that he or she "in fact, violates a condition of release."  15 M.R.S. § 1092(1) (2020); *see State v. LeBlanc-Simpson*, 2018 ME 109, ¶ 17, 190 A.3d 1015.  It is a Class C crime when the underlying charge on which the defendant was bailed was "punishable by a maximum period of imprisonment of one year or more and the condition of release violated is one specified in section 1026, subsection 3, paragraph A, subparagraph (5), (8), (10-A) or (13)."  15 M.R.S. § 1092(1)(B).  Violation of a condition of release is a strict liability crime, 15 M.R.S. § 1092(3), meaning no proof of a culpable state of mind is required, but the State must establish that the defendant "had prior knowledge of the relevant conditions of release."  *LeBlanc-Simpson*, 2018 ME 109, ¶ 18, 190 A.3d 1015.

[¶13]  As discussed above, the State charged Sloboda with a violation of a condition of release based on its allegations that (1) Sloboda was subject to preconviction bail on November 25, 2018, that required him to have no contact

with certain individuals; (2) the underlying bail was for a burglary charge (Class B), 17-A M.R.S. § 401(1)(B)(4) (2020), punishable by up to ten years in prison, *see* 17-A M.R.S. § 1252(2)(B) (2018); and (3) he violated the bail by having contact with one of the prohibited individuals. Two of these elements— that Sloboda was subject to a preconviction bail condition on November 25, 2018, that required him to have no contact with a particular individual, and that the underlying charge on which he was bailed was for burglary, punishable by up to ten years in prison—constitute attendant circumstances elements pursuant to section 32. 15 M.R.S. § 1092(1)(B). The requirement that Sloboda had prior knowledge that he was subject to that condition of release is either a state-of-mind element or an attendant circumstances element, but we need not determine which because the fact that his knowledge of the condition may have occurred in Maine is irrelevant to a jurisdiction analysis pursuant to the plain language of section 7(1)(A). *See* 17-A M.R.S. § 32.

[¶14] The conduct element in Sloboda's crime is the act of having contact with the victim, and the court found, based on competent record evidence, that such conduct occurred only in New Hampshire. Thus, the location of Sloboda's conduct is no basis for the court's jurisdiction in Maine.

12

[¶15] The only remaining source of jurisdiction—and the alternative to which the parties dedicate their arguments—is if the crime of violation of a condition of release requires proof of a result element and that result occurred in Maine.[5] 17-A M.R.S. § 7(1)(A).

[¶16] The State contends that a result element exists in the requirement that Sloboda's contact with the victim "in fact, violates a condition of release," in Maine. That is, the State argues that although the defendant's *conduct* was the contact with the victim in New Hampshire, the *result* was a bail violation in Maine because Sloboda was not subject to a bail order in New Hampshire and

---

[5] Section 7 contains additional limitations applicable to jurisdiction based on the location of a result that is an element:

> **2.** Subsection 1, paragraph A does not apply if:
>
> **A.** Causing a particular result or danger of causing that result is an element and the result occurs or is designed or likely to occur only in another jurisdiction where the conduct charged would not constitute an offense; or
>
> **B.** Causing a particular result is an element of the crime and the result is caused by conduct occurring outside the State which would not constitute an offense if the result had occurred there.

17-A M.R.S. § 7(2) (2020). By these exclusions, Maine has no jurisdiction if a bail violation "would not constitute an offense" in New Hampshire. 17-A M.R.S. § 7(2)(A)-(B). These exclusions do not apply in the instant matter because violating a bail condition *is* an offense in New Hampshire. Although it is not a crime pursuant to New Hampshire statute, the New Hampshire Supreme Court has held that violating a bail condition constitutes criminal contempt, which is a common law crime punishable by fines or imprisonment. *State v. Smith*, 35 A.3d 646, 649-50 (N.H. 2011) ("We have expressly rejected the argument that contempt is not a crime simply because it is not defined in the Criminal Code."); *State v. Nott*, 821 A.2d 976, 978 (N.H. 2003) (holding that "violation of a bail order" constitutes "criminal contempt"); *State v. Martina*, 600 A.2d 132, 137-38 (N.H. 1991) (requiring that the State must prove criminal contempt beyond a reasonable doubt and noting that the resulting "imposition of a fine or imprisonment is punitive rather than remedial" (quotation marks omitted)).

it was Maine's bail order that Sloboda "in fact, violate[d]" by having contact with the victim. 15 M.R.S. § 1092(1). Contrary to the State's assertion, however, section 1092(1)(B) has no result element. As we have already concluded, the fact that the defendant was on preconviction or postconviction bail is not a result element. It is instead an attendant circumstance element. Thus, the State's argument fails because jurisdiction cannot be conveyed pursuant to section 7(1)(A) based on the locus of an attendant circumstance. *See* *Sumulikoski*, 110 A.3d at 862 ("[A] defendant's status alone does not provide a basis for jurisdiction.").

[¶17] Although there are myriad criminal statutes that expressly require proof of a particular harm or result caused by the defendant,[6] the plain language of section 1092(1)(B) does not require any particular harm. The requirement in section 1092(1)(B) that Sloboda "in fact, violates a condition of release" refers both to the *conduct* element, which, it is undisputed, occurred in New

---

[6] *See, e.g.*, 17-A M.R.S. § 201(1)(A) (2020) (defining murder to include "caus[ing] the death of another human being"); 17-A M.R.S. § 454(1)(A) (2020) (including, as an element of tampering with a witness, that the defendant "[i]nduces or otherwise causes . . . a witness . . . [t]o testify or inform in a manner the actor knows to be false"); 17-A M.R.S. § 501-A(1)(A)(1) (2020) (stating that one means of committing disorderly conduct is by "caus[ing] annoyance to others by intentionally . . . [m]aking loud and unreasonable noises"); 17-A M.R.S. § 703(1)(B) (2020) (setting out the elements of forgery, including that the defendant "causes another, by deception, to sign or execute a written instrument"); 17-A M.R.S. § 805(1)(C) (2020) (providing, as an element of aggravated criminal mischief, that the defendant's act "thereby causes a substantial interruption or impairment of [gas, water, transportation, etc.] service rendered to the public"); 17-A M.R.S. § 1002-A(1)(A) (2020) (stating that the criminal use of laser pointers is committed when, inter alia, the defendant's use of a laser pointer "[c]auses bodily injury to [an]other person").

14

Hampshire, and to the attendant circumstances element, which cannot confer jurisdiction.

[¶18] Pursuant to the unambiguous language of section 7(1)(A), only the occurrence of the conduct or the result elements in Maine will afford Maine jurisdiction. Because Sloboda's conduct occurred in New Hampshire and his offense contains no result element, section 7(1)(A) provides no basis for the court's exercise of subject matter jurisdiction over Sloboda's prosecution. This conclusion is also consistent with the holding in *Collin*, in which the defendant was convicted of theft by receiving stolen property that belonged to a victim from Maine. 1997 ME 6, ¶¶ 2-4, 687 A.2d 962. Although the defendant acted only in Canada, the State argued that Maine had jurisdiction to prosecute him because the result of the theft was to deprive a Maine company of its property. *Id.* ¶¶ 3, 11. We declined to apply section 7(1)(A) because the asserted result— loss to the victim—was not an element of the crime of theft by receiving stolen property, and, therefore, the fact that the victim was in Maine was "irrelevant."[7] *Collin*, 1997 ME 6, ¶ 11, 687 A.2d 962.

---

[7] This is unlike the analysis employed in those states whose statutes provide for jurisdiction when the result occurs in that state but that do not require that the result be an element of the crime. In Arizona, for example, the legislature has "maximize[d] the reach of its criminal jurisdiction by omitting the restriction that the result occurring within the state must be an element of the offense. Thus, under Arizona law, if [the defendant's] conduct had a direct effect in Arizona, Arizona can assert jurisdiction." *State v. Flores*, 188 P.3d 706, 713 (Ariz. Ct. App. 2008) (emphasis omitted) (citation omitted) (quotation marks omitted).

[¶19]  We also discern no basis for the court's exercise of jurisdiction in the other subdivisions of section 7.  In particular, the Attorney General and AEquitas, as amici, suggest that the court had jurisdiction pursuant to section 7(1)(E), which applies when "[t]he crime consists of the omission to perform a duty imposed on a person by the law of this State, regardless of where that person is when the omission occurs."[8]  By its plain language, an "omission" is "a failure to do something."  *Omission*, New Oxford American Dictionary (3d ed. 2010).  The essence of the amici's argument is that Sloboda failed to perform his legal duty to comply with the bail order *by affirmatively acting* in violation of the bail order.  This attempted application of section 7(1)(E) to Sloboda's prosecution is, however, an exercise in semantic gymnastics.

---

[8]  We note that neither of the *parties* themselves presented an argument relating to 17-A M.R.S. § 7(1)(E) (2020), either in the trial court or in this appeal, and only two of the amici have done so here.  Ordinarily, we will recognize a contention raised by an amicus curiae only if the issue was raised in the trial court and at least one of the parties also pursues the argument on appeal.  *See Ross v. Acadian Seaplants, Ltd.*, 2019 ME 45, ¶ 5 n.2, 206 A.3d 283*; Jacobs v. Jacobs*, 507 A.2d 596, 597 n.1 (Me. 1986).  Jurisdictional questions are not hampered by these preservation principles, however, because jurisdiction is foundational.  *See, e.g. Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 41, 86 A.3d 35 (stating that "the issue of jurisdiction may be raised at any time in a proceeding, including sua sponte by this Court"); *Guardianship of Gabriel W.*, 666 A.2d 505, 507-08 (Me. 1995) ("Lack of subject matter jurisdiction may be raised at any time, including in collateral proceedings when lack of subject matter jurisdiction appears on the face of the record of the judgment attacked." (citation omitted)); *Pederson v. Cole*, 501 A.2d 23, 25 n.2 (Me. 1985) ("The defense of lack of subject-matter jurisdiction may be raised at any time, even *sua sponte* by an appellate court."); *Moody v. Port Clyde Dev. Co.*, 102 Me. 365, 384, 66 A. 967 (1907) ("The very foundation of judicial proceedings is jurisdiction. The question of jurisdiction may therefore be raised at any stage of the proceedings by any suggestion that will apprise the court of the want thereof.").  Here, given that we could notice and resolve jurisdictional issues even if not otherwise raised at all, and given that the amici have presented argument regarding section 7(1)(E) through an established procedural mechanism, *see* M.R. App. P. 7A(e), we consider that argument.

[¶20]  We rejected a similar approach in *State v. Branch-Wear*, in which the defendant was convicted of tampering with a victim by preventing her daughter from testifying in a prosecution.  1997 ME 110, ¶¶ 2-6, 695 A.2d 1169. The defendant argued that the State had impermissibly prosecuted her for a crime of omission for failing to meet her legal obligation of producing the child at the trial.  *Id.* ¶ 8.  We characterized the defendant's argument as "a play on words," noting that the "failures to act" that the defendant described were instead "acts of evasion . . . and deceit . . . that caused her daughter to withhold testimony."  *Id.* ¶¶ 8, 10 ("The State and [the defendant] are looking at the same conduct.  They are simply describing it differently.").  We concluded that the State had "presented evidence of a crime of commission, not voluntary omission," in the defendant's efforts to keep the child from reaching the courthouse.  *Id.* ¶ 10.

[¶21]  The crimes of omission to which section 7(1)(E) might apply instead include the failure to pay taxes or child support due in Maine, for example—instances of criminal nonfeasance rather than any affirmative criminal act.  *See* Model Penal Code & Commentaries § 1.03 cmt. 5 at 52-53 (Am. Law Inst. 1985); *cf. Lindell*, 2020 ME 49, ¶ 25, --- A.3d --- (concluding that

the defendant's affirmative conduct in falsifying tax returns in Maine allowed the Maine court jurisdiction over his prosecution pursuant to section 7(1)(A)).

[¶22]  Our decision today is entirely a function of our construction and application of the jurisdictional statute as the Legislature has enacted it.  For the reasons we have discussed, through its enactments, the Legislature has not conferred Maine's courts with authority to adjudicate the charge filed against Sloboda.  In the absence of any basis for the court's exercise of jurisdiction pursuant to section 7(1), Sloboda's conviction cannot stand.[9]

[¶23]  Contrary to the State's suggestion, however, our conclusion that Maine lacks jurisdiction to prosecute Sloboda on a charge of violating a condition of release for his conduct in New Hampshire does not altogether deprive Maine of a means of enforcing its bail conditions.  Bail conditions are imposed "in order to reasonably ensure the appearance of the defendant as required, to otherwise reasonably ensure the integrity of the judicial process and, when applicable, to reasonably ensure the safety of others in the community."  15 M.R.S. § 1002 (2020).  Where, as here, a defendant violates bail conditions—even in New Hampshire—Maine is free to initiate bail revocation proceedings and ask that the defendant be held pending trial.  *See* 15 M.R.S.

---

[9] Because we agree with Sloboda that the trial court lacked subject matter jurisdiction, we do not address Sloboda's challenge to the sufficiency of the evidence supporting his conviction.

§§ 1095-1097 (2020). Moreover, when a defendant's violation of a bail condition constitutes a new criminal act—if, for example, Sloboda had assaulted the protected individual—that new criminal act could be prosecuted as such in the appropriate jurisdiction. This, however, does not change the conclusion that, as written, the unambiguous provisions of section 7(1) do not give Maine courts subject matter jurisdiction in this case. For us to conclude otherwise, we would be required to rewrite the statute, and that we cannot do.

The entry is:

> Judgment vacated. Remanded for entry of dismissal of the indictment.

---

HORTON, J., with whom JABAR and CONNORS, JJ., join, dissenting.

[¶24] I respectfully dissent from the Court's conclusion that the trial court lacked statutory jurisdiction to convict Emanuel J. Sloboda for violating the no-contact bail condition. I would affirm the conviction based on the court's jurisdiction over the subject matter and Sloboda's person, and based on the sufficiency of the evidence to prove the alleged violation beyond a reasonable doubt.

[¶25]  Jurisdiction existed because Sloboda's failure to comply with his conditions of release fell within the statutory provision conferring jurisdiction on the Maine courts to convict a defendant of a crime if "[t]he crime consists of the omission to perform a duty imposed on a person by the law of this State, regardless of where that person is when the omission occurs," 17-A M.R.S. § 7(1)(E) (2020); *see* 15 M.R.S. § 1092 (2020).[10]

[¶26]  The bail code authorizes Maine courts to impose upon criminal defendants the duty to comply with conditions of release.  *See* 15 M.R.S. § 1026(1), (3)(A) (2020) (authorizing imposition of conditions of release); 15 M.R.S. § 1092 (criminalizing the failure to comply with conditions of release).  That duty is "imposed on a person" for purposes of section 7(1)(E) when a court with jurisdiction over the person issues a bail bond, commitment order, and conditions-of-release form consistent with 15 M.R.S. § 1026 (2020). As is typically true of a duty imposed by court order, Sloboda's duty to comply

---

[10]  Although I conclude that the court had jurisdiction, I do so on different grounds than the trial court. *See Bouchard v. Frost*, 2004 ME 9, ¶ 8, 840 A.2d 109 ("[W]e can affirm a judgment on rationale different than that relied on by the [trial c]ourt."). I therefore do not address the trial court's conclusion that it had jurisdiction based on a "territorial relationship" between the results of Sloboda's conduct and the State of Maine. *See* 17-A M.R.S. § 7(1)(A), (4) (2020). In addition, because I conclude that the court had jurisdiction to convict Sloboda pursuant to 17-A M.R.S. § 7(1)(E) (2020), I need not address the State's contention that the result of Sloboda's offense occurred in Maine and the court therefore had jurisdiction pursuant to 17-A M.R.S. § 7(1)(A). But I would not foreclose the possibility that section 7(1)(A) was intended to encompass results inherent in offenses that do not specify a certain harm. *See, e.g.*, *Brehm v. State*, 558 N.E.2d 906, 907-09 (Ind. Ct. App. 1990) (discussing a statute with substantively identical "result" language and reaching a conclusion similar to the one urged by the State in this case).

with his bail conditions, which was imposed by a court having personal jurisdiction over him,[11] continued to apply regardless of where he was, within the meaning of section 7(1)(E). *See Commonwealth v. Maguigan*, 511 A.2d 1327, 1332 (Pa. 1986) (explaining that a criminal court's personal jurisdiction over an absent defendant includes the authority to compel the defendant to return for trial). The Court's observation that the State could or should have filed a motion to revoke Sloboda's bail instead of prosecuting him implicitly acknowledges that his duty to comply with bail conditions applied outside Maine—otherwise, there would be no basis for the State to move to revoke bail. *See* Court's Opinion ¶ 23.

[¶27] The bail bond that Sloboda signed included the following provision: "As a condition of my release, I shall comply with any condition(s) set forth on the Conditions of Release form."[12] The attached commitment order and conditions-of-release form included a condition prohibiting contact with a specific person. The court found, based on competent evidence admitted

---

[11] "It is well settled that a [criminal] court has *personal* jurisdiction over any party who appears before it, regardless of how his appearance was obtained." *United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991).

[12] In signing the bail bond, Sloboda also acknowledged: "**I agree to obey the following conditions of my release so long as this bail bond remains in effect.** *I understand that it is a crime for me to violate any of these conditions, and that if I violate these conditions I will be subject to arrest, jail and/or a fine*." (Italic emphasis added.)

during a trial, that Sloboda failed to comply with the no-contact condition. Pursuant to the plain language of section 7(1)(E), Sloboda's conduct constituted an "omission to perform" his duty of compliance. *See, e.g.*, *State v. Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011 ("We look first to the plain language of the statute to determine its meaning if we can do so while avoiding absurd, illogical, or inconsistent results.").

[¶28]  Focusing on the affirmative act constituting the bail violation, the Court concludes, to the contrary, that Sloboda's conduct could not constitute an "omission" to perform a duty within the meaning of section 7(1)(E):

> The essence of [the argument that jurisdiction exists under section 7(1)(E)] is that Sloboda failed to perform his legal duty to comply with the bail order *by affirmatively acting* in violation of the bail order. This attempted application of section 7(1)(E) to Sloboda's prosecution is, however, an exercise in semantic gymnastics.

Court's Opinion ¶ 19.  The Court notes that "[t]he crimes of omission to which section 7(1)(E) might apply instead include the failure to pay taxes or child support due in Maine, for example—instances of criminal nonfeasance rather than any affirmative criminal act."  Court's Opinion ¶ 21.

[¶29]  The Court's conclusion is inconsistent with the language of the bail code.  The bail code defines all of the conditions of release that it authorizes in mandatory terms so as to create an affirmative duty to comply with all

conditions of release, even when the substantive effect of a condition is prohibitory.[13]  *See* 15 M.R.S. § 1026(3)(A)(1)-(19).  Indeed, the imposition of a no-contact condition such as the one in this case requires a defendant to

> *[a]void all contact* with a victim of the alleged crime, a potential witness regarding the alleged crime or with any other family or household members of the victim or the defendant or to contact those individuals only at certain times or under certain conditions.

15 M.R.S. § 1026(3)(A)(5) (emphasis added).

[¶30]  Thus, the bail code defines conditions of release as affirmative mandates.  A failure to comply with a bail condition—even a failure that takes the form of an affirmative act—must therefore constitute an "omission to perform a duty" for purposes of section 7(1)(E).[14]  *See State v. Jones*,

---

[13]  For example, conditions that restrict residence or travel, impose a curfew, or prohibit possession of firearms are all defined in mandatory rather than prohibitory terms.  *See* 15 M.R.S. § 1026(3)(A)(4) (2020) ("Abide by specified restrictions on personal associations, place of abode or travel"); 15 M.R.S. § 1026(3)(A)(7) (2020) ("Comply with a specified curfew"); 15 M.R.S. § 1026(3)(A)(8) (2020) ("Refrain from possessing a firearm or other dangerous weapon").  The plain effect of the Legislature's chosen phrasing is to create affirmative duties of compliance, such that a failure to comply is an omission to perform a mandated duty.

[14]  This conclusion is consistent with our decision in *State v. Damon*, 317 A.2d 459 (Me. 1974). There, we equated the affirmative act of "[e]scape of furlough" with the "wilful failure to resume physical confinement at the Maine State Prison."  *Id.* at 460-61.  Courts in other jurisdictions have also held, in other contexts, that defendants omitted to perform legal duties by acting affirmatively, as opposed to by failing to act.  The District Court of Appeal of Florida, for example, concluded that the state had jurisdiction to convict a defendant of the affirmative criminal act of identity theft because the crime constituted an omission to perform a duty to obtain consent from the victim.  *See State v. Roberts*, 143 So. 3d 936, 936-39 (Fla. Dist. Ct. App. 2014); *see also Commonwealth v. Thompson*, 50 N.E.3d 845, 857-58 (Mass. App. Ct. 2016) (examining credit card fraud, discussing similar principles, and deciding the same); *State v. James*, 79 P.3d 169, 173-77 (Kan. 2003) (concluding that the state had jurisdiction where the defendant violated a duty to refrain from mistreating dependent adults by leaving the victims in a hot car, causing their deaths).  The Florida court also concluded that the state had jurisdiction to convict a defendant of a crime prohibiting the removal of children from

673 P.2d 455, 456 (Kan. Ct. App. 1983) (noting that a statute extending criminal jurisdiction to the omission to perform a duty imposed on a person by law regardless of the person's location "codifies the common law principle that a person may commit a crime within this state while remaining outside it, *and such crime may be an act of omission as well as an act of commission*" (emphasis added)).

[¶31] The Court's focus on the affirmative nature of Sloboda's bail violation as the sole basis for its conclusion that section 7(1)(E) does not confer jurisdiction implies a view that section 7(1)(E) *would* apply if Sloboda's bail violation consisted of a *failure* to act. Court's Opinion ¶¶ 19-21. In that case, section 7(1)(E) would confer jurisdiction to prosecute out-of-state bail violations involving inaction by the defendant, such as failing to notify the court of an address change or to take medications as prescribed, but would not authorize prosecution of out-of-state violations such as having contact with an alleged victim or committing a new crime.

---

the state in violation of a court order, where the defendant's affirmative acts in violation of the order occurred entirely outside of the state. *State v. Costa*, 558 So. 2d 525, 526 (Fla. Dist. Ct. App. 1990) (citing a territorial applicability statute providing that "[a]n offense that is based on *an omission to perform a duty imposed by the law of this state* is committed within the state, regardless of the location of the offender at the time of the omission" (quotation marks omitted)); *see, e.g., People v. Caruso*, 519 N.E.2d 440, 442-46 (Ill. 1987) (concluding that a child abduction crime that prohibited "violat[ing] . . . a valid court order . . . by concealing or detaining [a] child or removing [a] child from the jurisdiction of the court" was "based on an omission to perform a duty imposed by the law of this State" (quotation marks omitted)).

24

[¶32]  But nothing in either the bail code or section 7(1)(E) indicates that the Legislature intended to confer jurisdiction over violations of some conditions of release but not violations of other conditions of release, and there would be no cogent basis for the Legislature to draw that distinction.[15]  In fact, it is the violations involving affirmative acts that can result in direct and even lethal harm to victims, witnesses, and others.  The Legislature cannot have intended to confer jurisdiction to prosecute an out-of-state violation consisting of failure to take medications or to report an address change but not to prosecute an out-of-state violation consisting of contact (or worse) with an alleged victim, a co-defendant, or a witness.

[¶33]  At oral argument, even Sloboda agreed that a defendant can be prosecuted for a bail violation in Maine based on wholly out-of-state criminal

---

[15]  Nor does the legislative history suggest such an interpretation.  Section 7(1)(E) incorporates language present in section 1.03 of the Model Penal Code.  *See* 17-A M.R.S. § 7(1)(E); Model Penal Code & Commentaries § 1.03(1)(e) (Am. Law Inst. 1985) (providing for jurisdiction where "the offense *consists of the omission to perform a legal duty imposed by the law of this State* with respect to domicile, residence or a relationship to a person, thing or transaction in the State" (emphasis added)).  Section 1.03 "propose[d] broad jurisdictional bases, within the limits of due process," based "[o]n the premise[s] that it is particularly desirable in a federated state to increase jurisdictional options and that if a state's assertion of jurisdiction does not result in unfairness to the person charged, the state should be accorded jurisdiction over all those who engage in conduct that affects the state's interests."  Model Penal Code & Commentaries § 1.03 explanatory note (Am. Law Inst. 1985).  Given the express notice to Sloboda that he would be subject to prosecution if he violated any of the conditions of his release, and the detrimental effect of the bail violation within Maine, jurisdiction to convict Sloboda in Maine does not present fairness concerns.  *See Strassheim v. Daily*, 221 U.S. 280, 284-85 (1911); *United States v. Woodward*, 149 F.3d 46, 66 & n.11 (1st Cir. 1998); *State v. Vetrano*, 121 Me. 368, 380, 117 A. 460 (1922).

conduct committed while on bail.[16]  His acknowledgment is significant because a condition prohibiting criminal conduct is no different, for purposes of section 7(1)(E), from a condition prohibiting contact with a specific person. *See State v. West*, 512 N.W.2d 207, 208-09 (Wis. Ct. App. 1993) (holding that a defendant who violated a Wisconsin bail order by committing a crime in Ohio could be prosecuted in Wisconsin for the crime of "bail jumping"); *see also* 15 M.R.S. § 1026(1) (providing that "[e]very order for the pretrial release of any defendant must include . . . the condition[] that the defendant refrain from new criminal conduct").

[¶34]  The Court's interpretation means that defendants whose bail conditions prohibit them from having contact with out-of-state alleged victims, co-defendants, or witnesses; from possession of firearms or dangerous weapons; from consuming alcoholic beverages; from operating motor vehicles; from accessing the Internet; or from engaging in any other non-criminal activity can circumvent prosecution simply by violating those conditions in another

---

[16]  Sloboda gave the following example: "Say it's a domestic case, and some parent neglects their child.  They're prosecuted in New Hampshire . . . . They're convicted.  You take that conviction to Maine and then you prosecute them under the Maine bail order and say, 'See, you didn't follow your Maine bail order; you were convicted of a crime.'"  In response to a question about whether the State could enforce bail conditions by moving to revoke bail, Sloboda replied, "Of course, or by proving that he had contact in Rochester [New Hampshire]; New Hampshire gives full faith and credit to the Maine order; he's convicted of violating a legal order in New Hampshire; you take that certified conviction to Maine, and then prosecute him."

jurisdiction. To protect the State's ability to prosecute bail violations, it would be understandable for prosecutors to ask more frequently for bail conditions prohibiting defendants from leaving the State of Maine, although the Court's interpretation now calls into question whether a defendant subject to such a condition could be prosecuted for leaving the state.

[¶35] Finally, beyond the bail context, the Court's interpretation of section 7(1)(E) also calls into question whether a defendant who affirmatively violates a Maine protection order can be prosecuted if the defendant and the plaintiff are both outside the state at the time. *See* 17-A M.R.S. § 506-B (2020); *see also* 5 M.R.S. § 4659(1) (2020); 15 M.R.S. § 321(6) (2020); 19-A M.R.S. § 4011(1), (4) (2020). If the order were a qualifying protection order, the full faith and credit provision of the United States Code would authorize the state in which the violation occurred to prosecute, *see* 18 U.S.C.S. § 2265 (LEXIS through Pub. L. No. 116-149), but that state might not, and Maine definitely could not under the Court's interpretation.

[¶36] For these reasons, I would affirm, because the court had jurisdiction and the record evidence was sufficient to support the conviction.

Harry Center, Esq. (orally), Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant Emanuel J. Sloboda

Kathryn Loftus Slattery, District Attorney, and Andrew E. Berggren, Esq. (orally), Prosecutorial District #1, Alfred, for appellee State of Maine

Aaron M. Frey, Attorney General, and Laura A. Yustak, Asst. Atty. Gen., Office of the Attorney General, Augusta, for amicus curiae Office of the Maine Attorney General

Jeff Goldman, Esq., Morgan, Lewis & Bockius LLP, Boston, Massachusetts, for amicus curiae AEquitas

Lawrence C. Winger, amicus curiae pro se

York County Unified Criminal Docket docket number CR-2018-1073
FOR CLERK REFERENCE ONLY