STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CR-21-01921

STATE OF MAINE,                    )
                                   )
                                   )
                                   )          ORDER
      v.                           )
                                   )
HANEEF LAMONT,                     )
                                   )
      DEFENDANT,                   )
                                   )

Before the Court is the Defendant, Haneef Lamont's ("Lamont"), Motion to Dismiss the one count indictment against him and the State's Motion to Amend the Complaint. For the reasons set forth herein, the Defendant's Motion to Dismiss is DENIED and the State's Motion to Amend count 1 of the superseding complaint is GRANTED.

## FACTUAL BACKGROUND

Haneef Lamont ("Lamont") is charged with Aggravated Trafficking in Scheduled Drugs, Class A, 17-A M.R.S. § 1105-A(1)(D). The following facts of the case are assumed as true for the purposes of the instant Motion and are taken directly from Lamont's Motion and the State's reply. *See State v. Collin*, 1997 ME 6, ¶ 6, 687 A.2d 962(holding that territorial jurisdiction should be decided by the jury when there is a question of fact as to where the alleged criminal conduct occurred, but can be decided by the court when the determination does not require the resolution of a factual dispute).

Lamont's indictment and arrest was the result of a criminal investigation conducted by the Maine Drug Enforcement Agency (MDEA) into drug trafficking activity in the Brunswick

1

area. That investigation led to the arrest of Orville Dawkins, a large-scale trafficker of cocaine. Dawkins was charged with Aggravated Trafficking in Scheduled Drugs, Class A, and as part of the resolution of his case, agreed to cooperate with the MDEA.

Dawkins' cooperation involved the identification of his supplier, Haneef Lamont, the Defendant here. Dawkins told investigators that he had been purchasing cocaine from Lamont for a period of approximately two years. Hawkins told MDEA agents that, on two occasions, he drove to New York City to purchase product from Lamont and that, on all other occasions, he met Lamont in the parking lot of a Walmart located in Sturbridge, Massachusetts. The last of these transactions took place in New York City on December 28th, 2020, when Dawkins purchased twenty four ounces of cocaine from Lamont for $30,000.

After getting Dawkins to cooperate, MDEA was able to build a case against Lamont which led to his indictment and eventual arrest by the United States Marshals Service in New York. The evidence against Lamont includes a positive identification of Lamont by Hawkins, a series of text message communications between Hawkins and Lamont, EZ pass records from Dawkins' vehicle, and cell phone location records from Lamont's phone. MDEA, through Dawkins' cooperation, also attempted to arrange a transaction between Lamont and Dawkins in which Lamont would travel to Maine and supply cocaine to Dawkins. This effort produced multiple recorded phone calls which contained conversation between Lamont and Dawkins that was consistent with arranging a drug transaction. MDEA's attempts were ultimately unsuccessful and investigators proceeded to obtain an arrest warrant for Lamont based on the information they had.

2

At no time during the course of the investigation into Lamont, nor during Lamont's relationship with Dawkins, did he ever set foot in the State of Maine. In their respective filings, and again at hearing, the parties stipulated to this fact.

On September 24th, 2021, Attorney Timothy Zerillo entered his appearance as counsel of record for Lamont and on September 30th, 2021, he filed the instant Motion to Dismiss based on lack of jurisdiction. The State properly filed its reply on October 19th, and a hearing was held on October 21st, at which the parties presented their respective arguments. After hearing, this Court issued an order granting the State leave to file an amended complaint charging criminal conspiracy and giving both parties until November 1st, 2021, to further brief the jurisdictional issues before the Court. On November 1st, both Lamont and the State filed further briefing, and the State filed an additional Motion to amend count I of the superseding complaint. The parties then were heard on their further briefing at a second hearing on November 2nd. Against this procedural and factual backdrop, the Court now renders this decision.

## DISCUSSION

### I.    Motion to Amend Complaint

The State, along with their brief supporting their legal position on 17-A M.R.S. § 7(1)(C)'s applicability, filed a Motion to amend count I of the original complaint. The State contends that this amendment is necessary to properly put the issue of accomplice liability before this Court, fitting the complaint within the confines of 17-A M.R.S. § 7(1)(A). The Court hereby grants the State's Motion to Amend count I of the complaint but, as discussed *infra* at 3, the Court notes that Section 7(1)(A) does not confer jurisdiction over Lamont.

### II.   Motion to Dismiss

3

The issue raised by Lamont's Motion to Dismiss is whether this Court may properly exercise subject matter jurisdiction over Lamont.

The jurisdiction of Maine's trial courts is exclusively statutory in nature. *Ginn v. Penobscot Co.*, 342 A.2d 270, 274 (Me. 1975). It is elementary law that a state's statutes have no extra territorial force, nor do its courts have any jurisdiction of offenses committed in other states or foreign countries. *State v. Baldwin*, 305 A.2d 555, 559 (Me. 1973). The existence of territorial jurisdiction of the court over the defendant must be proved beyond a reasonable doubt. 17-A M.R.S. § 7(5).

A Maine trial court's "[t]erritorial" criminal jurisdiction is limited to the seven bases for which 17-A M.R.S. § 7(1) provides. The three specific bases placed in issue here are:

> 1. Except as otherwise provided in this section, a person may be convicted under the laws of this State for any crime committed by the person's own conduct or by the conduct of another for which the person is legally accountable only if:
>
>> A. Either the conduct that is an element of the crime or the result that is such an element occurs within this State or has a territorial relationship to this State;
>>
>> B. Conduct occurring outside this State constitutes an attempt to commit a crime under the laws of this State and the intent is that the crime take place within this State; [or]
>>
>> C. Conduct occurring outside this State would constitute a criminal conspiracy under the laws of this State, an overt act in furtherance of the conspiracy occurs within this State or has a territorial relationship to this State, and the object of the conspiracy is that a crime take place within this State;

17-A M.R.S. § 7(1)(A)-(C).

The Defense argues that jurisdiction is improper under 17-A M.R.S. § 7(1)(A) and that no alternative theory of liability such as accomplice liability, attempt, or conspiracy alters this outcome. The State argues that either subsection (A), (B) or (C) of 17-A M.R.S. § 7(1) sufficiently provides a basis for the exercise of this Court's jurisdiction. Because each subsection

4

is argued as an independent basis for jurisdiction by the State, the Court separately addresses the applicability of subsections (A), (B) and (C) below.

## A. Exercise of Jurisdiction Pursuant to 17-A M.R.S. § 7(1)(A)

First, the State argues that Section 7(1)(A) provides a basis for jurisdiction because under 17-A M.R.S. § 57(3)(A) Lamont is an accomplice to Dawkins' crimes in the State of Maine. The Defense argues that the applicability of Section 7(1)(A) is governed by *State v. Sloboda*, 2020 ME 103, 237 A.3d 848, and that none of the scenarios which allow Section 7(1)(A) to confer jurisdiction are present here.

Maine's accomplice liability statute provides that a person is an accomplice of another in the commission of a crime if "with the intent of promoting or facilitating the commission of the crime, the person solicits such other person . . . aids or agrees to aid or attempts to aid such other person in the commission of a crime." 17-A M.R.S. § 57(3)(A). The State contends that the accomplice liability statute allows the Court to exercise jurisdiction under Section 7(1)(A) because when that section is read in conjunction with the accomplice liability statute, it covers Lamont's extraterritorial conduct. This Court disagrees.

In *Sloboda*, the Law Court laid out four scenarios where Section 7(1)(A) may confer jurisdiction upon the trial court: (1) When the conduct that is an element of a crime has a territorial relationship to Maine; (2) When the result that is an element of the crime has a territorial relationship to Maine; (3) When the conduct that is an element of a crime occurred in Maine; or (4) When the result that is an element of the crime occurred in Maine. *Sloboda*, 2020 ME 103, ¶ 6, 237 A.3d 848.

In the instant case, neither scenario one nor scenario two is applicable because the conduct which led to charges against Lamont indisputably occurred outside the State of Maine.

5

*See Id.* ("territorial relationship jurisdiction exists only when it is impossible to determine where the conduct occurred in relation to the state boundary line.") Scenario three also fails to confer jurisdiction for the same reason, leaving the State with one possible jurisdictional hook under Section 7(1)(A).

Scenario four, however, is also not applicable here because the crime that Lamont is charged with, Aggravated Trafficking of Scheduled Drugs, Class A, contains no result element. A person is guilty of aggravated trafficking of cocaine if the person: (1) intentionally or knowingly (2) traffics in (3) what the person knows or believes to be a scheduled drug, (4) which in fact is a scheduled drug, and (5) the drug is . . . cocaine in a quantity of 112 grams or more or cocaine in the form of cocaine base in a quantity of 32 grams or more. 17-A M.R.S. § 1105-A(D).

The crime charged contains a mens rea, a conduct element, and three separate attendant circumstances, but no result element. Accordingly, scenario four proffered by the Law Court in *State v. Sloboda* does not allow this Court to exercise jurisdiction over Lamont either. Therefore, jurisdiction is not proper pursuant to 17-A M.R.S. § 7(1)(A).

## B. Exercise of Jurisdiction Pursuant to 17-A M.R.S. § 7(1)(B)

Next, the State argues that this Court can exercise jurisdiction over Lamont pursuant to Section 7(1)(B) which allows the Court to confer extraterritorial jurisdiction if "Conduct occurring outside this State constitutes an attempt to commit a crime under the laws of this State and the intent is that the crime take place within this State." (emphasis added). The State argues that the criminal attempt statute, when read in conjunction with Section 7(1)(B) covers Lamont's extraterritorial conduct. The Defense counters that the facts currently before the Court plainly do not constitute an attempt rendering Section 7(1)(B) inapplicable.

6

17-A M.R.S. § 152(1) provides "A person is guilty of criminal attempt if, acting with the kind of culpability required for the commission of the crime, and with the intent to complete the commission of the crime, the person engages in conduct that in fact constitutes a substantial step toward its commission." Criminal Attempt does not need to be separately charged, a charge of the commission of a crime is deemed to charge the attempt to commit that crime. 17-A M.R.S. § 152(3-A).

Thus, the inquiry for jurisdictional purposes is whether, beyond a reasonable doubt, Lamont's conduct outside the State of Maine constitutes an attempt to commit a crime under Maine's Laws and whether, beyond a reasonable doubt, Lamont had the intent that the crime take place within the State.

Here, there is no assertion from either the Defense or the State that Lamont did not engage in the trafficking of cocaine. Based on the facts alleged, on multiple occasions, twice in New York, and all other times in Massachusetts, Lamont, in fact, engaged in conduct constituting the crime of aggravated trafficking. While an attempt to commit a crime is deemed charged when the underlying offense is brought, it may not be used as a jurisdictional hook when, as here, there is no dispute that the Defendant committed the charged offense. If Section 7(1)(B) did confer jurisdiction here, it would offer the State an opportunity to circumvent Section 7(1)(A) whenever the facts do not fit within that subsection's parameters. Attempt, by definition, covers conduct which stops short of commission. Accordingly 17-A M.R.S. § 7(1)(B) does not confer jurisdiction over Lamont in this instance.

## C. Exercise of Jurisdiction Pursuant to 17-A M.R.S. § 7(1)(C)

Lastly, the State alleges that this court can exercise jurisdiction over Lamont pursuant to Section 7(1)(C). Lamont argues that Section 7(1)(C) also fails to grant jurisdiction because no

7

"overt act in furtherance of the conspiracy" was taken by Lamont, in Maine, and because the State cannot show that the object of the conspiratorial relationship between Lamont and Dawkins was that cocaine be trafficked within Maine.

Section 7(1)(C) provides that Maine's trial courts may exercise their extraterritorial jurisdiction when "conduct occurring outside this State would constitute a criminal conspiracy under the laws of this State, an overt act in furtherance of the conspiracy occurs within this State or has a territorial relationship to this State, and the object of the conspiracy is that a crime take place within this State." Thus, in order for the State to carry its burden and this court to have jurisdiction pursuant to this subsection, it must prove, beyond a reasonable doubt, that (1) the alleged conduct between Lamont and Dawkins constitutes a criminal conspiracy, (2) an overt act in furtherance of the criminal conspiracy occurred in Maine, and (3) the object of the conspiracy was that a crime take place within Maine.

Addressing first the existence of a criminal conspiracy, the Court turns to 17-A M.R.S. M.R.S. § 151(1). A person is guilty of a criminal conspiracy if, "with the intent that conduct be performed that in fact would constitute a crime or crimes, the actor agrees with one or more others to engage in or cause the performance of the conduct and the most serious crime that is the object of the conspiracy is . . . [a] class A crime. 17-A M.R.S. § 151(1)(B). A person may not be convicted of criminal conspiracy unless it is alleged and proved that the actor, or one with whom the actor conspired, took a substantial step toward commission of the crime. 17-A M.R.S. § 151(4). A substantial step is any conduct which, under the circumstances in which it occurs, is strongly corroborative of the firmness of the actor's intent to complete commission of the crime; provided that speech alone may not constitute a substantial step. *Id.*

8

Here, Lamont and Hawkins' alleged conduct constitutes a conspiracy. The case against each includes phone calls, other communications, and testimony from one of the conspirators evidencing an intent to traffic cocaine. The evidence also shows an agreement between the two to engage in trafficking and that Lamont took a substantial step towards the commission of the crime of trafficking. On multiple occasions, Lamont agreed to and did deliver cocaine to Dawkins. He also facilitated multiple transactions in which cash from Dawkins was exchanged for cocaine. This delivery and facilitation is corroborative of the firmness of Lamont's intent to complete the crime of aggravated trafficking.

Next, the Court needs to consider whether an overt act in furtherance of the conspiracy took place in Maine. The Defense contends that, in order for jurisdiction to be proper, that overt act had to be done *by* Lamont, *within* Maine. This Court disagrees.

17-A M.R.S. § 7(1) allows a Maine trial court to exercise extraterritorial jurisdiction over a criminally accused person when the charged crime is a result of a "person's own conduct" or "the conduct of another for which the person is legally accountable". As discussed *supra*, the uncontested facts support the existence of a criminal conspiracy to traffic cocaine between Lamont and Dawkins. Since all persons who engage in a conspiracy are legally responsible for the foreseeable criminal conduct of their fellow conspirators, Section 7(1)(C) may establish jurisdiction over Lamont based on Dawkins' conduct. *See, e.g., United States v. Flores*, 73 F.3d 826, 833 (8th Cir. 1996)("[A] defendant may be held accountable for the criminal activities of other co-conspirators which "fall within the scope of criminal activity [he] agreed to jointly undertake," including "other drug transactions " which "are part of the same course of conduct or scheme."); *United States v. Bingham*, 81 F.3d 617, 727 (6th Cir. 1996)("[O]ne co-conspirator is responsible for the conduct of another co-conspirator if that conduct was reasonably foreseeable

9

to him in furtherance of the execution of jointly undertaken criminal activity.") *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996)("[e]ach party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of knowledge thereof.").

Having established that 17-A M.R.S. § 7(1)(C) may apply to Lamont based on Dawkins' conduct, the question then becomes whether any of Dawkins conduct within the State of Maine constitutes an overt act in furtherance of the conspiracy.

An overt act, is an act that, in the eyes of the actor, is "adapted or suitable for the purpose and must have reached far enough toward the accomplishment of the desired result that in the ordinary and likely course of things, given the contemporaneous intent to [further the conspiracy], the perpetrator would be in a direct, unequivocal movement toward [accomplishing the conspiracy's object.]" *State v. Powers*, 386 A.2d 721, 726 (Me. 1978).

In the instant case, Dawkins conducted a number of Maine based overt acts in furtherance of the conspiracy to traffic cocaine. He had multiple conversations with Lamont from Maine about obtaining product to distribute within the state, he obtained and carried cocaine across state lines into Maine, and while within the state's borders he, in fact, sold and distributed cocaine. Each of these acts were adapted and suitable for accomplishing the desired result of the conspiracy and were taken with the intent to accomplish the conspiracy's object.

Lastly, the State must prove that the "object of the conspiracy was that a crime take place in Maine." Lamont, in his brief, proffers a factual scenario which he says would more squarely fit within Section 7(1)(C)'s parameters. Specifically, he constructs a fictional conversation between two alleged conspirators who expressly agree to sell drugs "up in Maine." The Court

agrees that were such evidence of a conversation available, Section 7(1)(C) would allow the Court to exercise its jurisdiction over Lamont. However, the Court disagrees that this is the only scenario where it could be found that the "object of the conspiracy" was to traffic cocaine in Maine.

In the instant case, Lamont knew that Dawkins resided in Maine and that Dawkins was traveling from Maine to Sturbridge or New York to buy cocaine from him. Lamont also knew that Dawkins was returning to Maine, selling the product he distributed, and then returning for more once that lot was depleted. There are also recordings of conversations between Lamont and Dawkins, in which Dawkins asks Lamont to come to Maine to distribute cocaine. Although Lamont never agreed to engage in this controlled buy within Maine's borders, what inference was Lamont to draw from Dawkins' request other than that Dawkins lived—and trafficked drugs—in Maine. The Court is not convinced that Lamont did not know that the product he was selling to Dawkins was sold in Maine. The facts, as alleged, establish beyond a reasonable doubt that the object of the conspiratorial relationship between Dawkins and Lamont was to traffic cocaine within Maine.

Accordingly, the State has met its burden, and has established jurisdiction over Lamont pursuant to 17-A M.R.S. § 7(1)(C).

## CONCLUSION

The State's Motion to amend count 1 of its complaint against Haneef Lamont is Granted. The Defendant's Motion to Dismiss due to a lack of Subject Matter Jurisdiction is denied. Jurisdiction is improper pursuant to 17-A M.R.S. § (1)(A) and (B) but is proper pursuant to Section 7(1)(C). This Court, therefore, may exercise its extraterritorial jurisdiction over Lamont.

11

Dated: November 2, 2021

Roland A. Cole
Justice, Maine Superior Court

12